1
2
3
4
5
6
7

SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
Dolly K. Hansen (SBN 254826)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com
dolly@spertuslaw.com

*Attorneys for Defendants Gerald Wiener
and Finance California*

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TATTERSALLS LTD., Incorporated
in England,

Plaintiff,

v.

GERALD WIENER aka GERALD H.
WIENER, an individual; FINANCE
CALIFORNIA, a corporation

Defendants.

Case No. 3:17-cv-01125-BTM-KSC

Hon. Barry Ted Moskowitz

**DECLARATION OF DOLLY K.
HANSEN IN SUPPORT OF
WIENER DEFENDANTS'
REQUEST FOR JUDICIAL
NOTICE**

*[Filed concurrently with Motion to
Dismiss and Request for Judicial
Notice]*

Date:    November 17, 2017
Time:    11:00 a.m.
Judge:  Barry Ted Moskowitz
Crtrm:  15B

1

*DECLARATION OF DOLLY K. HANSEN IN SUPPORT OF WIENER
DEFENDANTS' REQUEST FOR JUDICIAL NOTICE*

Spertus, Landes & Umhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

## DECLARATION OF DOLLY K. HANSEN

I, Dolly K. Hansen, state and declare as follows:

1.      I am counsel of record in the instant action for Defendants Gerald Wiener and Finance California (the "Wiener Defendants").  I submit this declaration in support of the Wiener Defendants' Request for Judicial Notice in Support of Wiener Defendants' Motion to Dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6).  Except as otherwise stated, I have personal and firsthand knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto under oath.

2.      Attached hereto as Exhibit A is a true and correct copy of the complaint filed in *Tattersalls Ltd., v. Jeffrey DeHaven*, Case No. 2:11-cv-06311-SJO-JEM, on August 1, 2011 in the Central District of California before Judge S. James Otero.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing facts are true and correct.

Executed this 2nd day of October 2017, at Los Angeles, California.


_____s/ Dolly K. Hansen_____
Dolly K. Hansen

*DECLARATION OF DOLLY K. HANSEN IN SUPPORT OF WIENER DEFENDANTS' REQUEST FOR JUDICIAL NOTICE*

# EXHIBIT A

**EXHIBIT A**

1  DIANA L. COURTEAU (CA SBN 113442)
2  NEIL M. KATSUYAMA (CA SBN 273172)
   COURTEAU & ASSOCIATES
3  dianacourteau@msn.com
   880 Apollo Street, Suite 246
4  El Segundo, CA 60245
5  Telephone: (310) 647-2844
   Facsimile: (310) 647-2842
6

7  Attorneys for Plaintiff
8  TATTERSALLS LTD.

9             UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11
                                          CV11-06311 SJO (SHx)
12  TATTERSALLS LTD., Incorporated in   )  CASE NO.:
    England                             )  COMPLAINT FOR:
13                                      )  1) BREACH OF CONTRACT;
14                  Plaintiff,          )  2) SPECIFIC PERFORMANCE;
15                                      )  3) UNJUST ENRICHMENT;
    v.                                  )  4) CONVERSION;
16                                      )  5) TRESPASS TO CHATTELS
17  JEFFREY DEHAVEN, an individual,     )
18                                      )
                   Defendant.           )
19                                      )
                                        )
20  _____)

21

22      Comes now Plaintiff Tattersalls Ltd. ("Tattersalls"), by and through its

23  counsel of record herein, and, for its complaint against Jeffrey DeHaven

24  ("DeHaven") alleges as follows:

25

26

27

28
                                    1

                               COMPLAINT

and costs, exceeds the sum or value specified by 28 U.S.C. §1332. This Court has jurisdiction in that it is a civil action between a citizen of a U.S. state and a citizen of a foreign nation in which the matter of controversy exceeds $75,000.

5. This Court has personal jurisdiction over DeHaven as DeHaven is, and at all times relevant was, a citizen of California residing in Del Mar, California. Further, DeHaven conducts business in California that is general and systematic in nature, as explained in further detail below.

## **VENUE**

6. Venue is proper in the Central District of California in that the Defendant was subject to personal jurisdiction in this District at the time the action is commenced and the property that is the subject of the action is located in this District. Where the case is based on diversity jurisdiction, 28 U.S.C. §1391(a), venue is proper where the property that is the subject of the action is located. The horse that is the subject of the contract, Singapore Lilly, is located in Monrovia, California. Therefore, venue is proper in the Central District of California.

7. Further, the Contract contains a forum selection clause permitting Tattersalls to select the forum. Paragraph 26 of the Conditions of Sale states that, "English Courts shall, unless TATTERSALLS elects otherwise, have exclusive jurisdiction to hear and determine any action arising thereunder." A true and correct copy of the Conditions of Sale is attached hereto as **Exhibit 1**. Therefore, Tattersalls is permitted to select the forum and, by the filing of this Complaint, has selected the Central District of California.

## **THE PARTIES**

---

**COMPLAINT**

2

8. Plaintiff Tattersalls is a blood-stock auctioneer that has, since incorporation in 1964, auctioned thoroughbred horses. Tattersalls regularly conducts auctions of internationally recognized thoroughbred horses. Tattersalls is, and at all relevant times was, a private limited company incorporated under the laws of England and with its principal place of business in Newmarket, England.

9. Defendant DeHaven is, and at all times relevant was, a citizen of California residing in Del Mar, California. He conducts business in California that is general and systematic in nature, as he owns several horses that are kept in Malibu Valley Farms, in Calabasas, California. Further, he is the owner of Natoma Advisors, Inc., a real estate company incorporated in California and with its principal place of business in Thousand Oaks, California. He is also a member of the Premae Company, LLC, which was formed under the laws of California.

## CHOICE OF LAW

10. The contract specifically provides that it is governed by English law. In cases based upon diversity jurisdiction, the law of the forum state applies in interpreting the contract. Where the contract is one for the sale for goods, the California Commercial Code recognizes a choice of law provision as long as the transaction bears a reasonable relationship to the nation whose law governs the contract. A choice of law provision must also meet the requirements set forth in Nedlloyd Lines B.V. v. Superior Court (1992) 3 Cal.App.4th 459, 465-66.

11. The auction occurred in Newmarket, England at Tattersalls' place of business and Plaintiff was and is incorporated in England. Therefore the Plaintiff and the transaction have a substantial relationship with England. English contract law is also not contrary to any fundamental policy of California. Because the

---

**COMPLAINT**

3

requirements of both Commercial Code §1301(a) and Nedlloyd are met, the contract's provision that English law governs is enforceable. Since the law of the forum state upholds the choice of law provision, it is therefore applicable in the present District.

## STATEMENT OF FACTS

12. On or about October 10, 2010, DeHaven signed a New Buyer Form indicating that he had read and accepted the Conditions of Sale (the "Acknowledgment") which set forth the terms governing all auction transactions with Tattersalls. *See* **Exhibit 1**.

13. At DeHaven's request, Gerald Wiener ("Wiener"), CEO of Finance California, sent a letter "To Whom It May Concern" dated October 11, 2010. The letter stated that the company had a business relationship with DeHaven's company, the Premae Company, and that it had a credit facility of approximately $750,000 with Finance California. The letter further stated that Wiener had spoken with several business associates of DeHaven and that he is an "honest, trustworthy, and a credible borrower."

14. On or about November 24, 2010, DeHaven entered into an agreement with Gordian Troeller ("Troeller") in which: (1) Troeller agreed to be DeHaven's authorized agent for the purposes of the Tattersalls December Sales 2010; and (2) DeHaven stated that he had read and accepted Tattersalls' Conditions of Sale and agreed to pay for all purchases made by Mr Troeller as his agent. Troeller was given the authority to be DeHaven's authorized agent and to act for him in all matters relating to the purchase of horses at Tatttersalls' December Sales 2010.

15. DeHaven purchased Singapore Lilly at an auction held by Tattersalls on November 29, 2010. DeHaven made his bids through his authorized agent,

Gordian Troeller. Upon making the highest bid of 210,000 guineas (£220,500) ($357,210), Troeller signed a purchase confirmation on behalf of DeHaven. The purchase confirmation form specifically stated that, in exchange for Singapore Lilly, the Purchaser agreed that the horse was purchased "subject to the Conditions of Sale" of Tattersalls. A true and correct copy of the purchase confirmation form is attached hereto as **Exhibit 2**.

16. Among the terms in the Conditions of Sale, DeHaven agreed: to pay the full amount of the purchase price (Exhibit 1 at ¶5.1); to permit Tattersalls to sue for the full amount of the Purchase Price and interest thereon (Exhibit 1 at ¶5.3); that Tattersalls may charge interest at a rate of 1.5% per month (Exhibit 1 at ¶25); that Tattersalls has absolute discretion to permit a purchaser to take away a horse that has not been paid for (Exhibit 1 at ¶6.1); that title to the horse will not pass until the purchaser pays the full purchase price (Exhibit 1 at ¶6.2); that for any horse in which Tattersalls still has title, Tattersalls has the right to demand that the purchaser deliver possession of the horse to Tattersalls (Exhibit 1 at ¶6.3); that after making such demand Tattersalls has the right to resell the horse (Exhibit 1 at ¶6.5); and that where Tattersalls resells a horse the purchaser is liable to pay the difference between the purchase price plus interest thereon and the price agreed on resale after deduction of expenses incurred in the sale (Exhibit 1 at ¶¶7.1 and 7.2).

17. On or about December 8, 2010, Tattersalls sent an invoice to DeHaven for the £220,500 ($357,210)[1], and £38,587.50 ($62,511.75) in value added tax (VAT) for a total of £259,087.50 (approximately $419,720).

18. Tattersalls, relying on DeHaven's Acknowledgment and the letter from Finance California that he had provided and the terms of the November 24, 2010 agreement between Dehaven and Troeller, permitted DeHaven to take possession

---

[1] Assuming a conversion rate of $1.62 per £1, the average rate for June, 2011.

**COMPLAINT**

5

of the horse, but reserved title to the horse until the full purchase price had been paid.

19. Had DeHaven not provided such Acknowledgment or directed Finance California to send the October 11 letter, Tattersalls would not have permitted DeHaven to take Singapore Lilly out of the country.

20. On or about December 31, 2010, DeHaven having shipped the horse to California and because the horse had been shipped outside of the European Union, Tattersalls promptly credited his balance for the £38,587.50 ($62,511.75) VAT. The remaining balance of £220,500 ($357,210) plus contractual interest due thereon, has yet to be paid.

21. On or about March 26, 2011, DeHaven sent a letter to David Anderson, a sales accountant for Tattersalls, stating that DeHaven intended to pay the outstanding bill, but he claimed that due to a government investigation and an internal audit, all his accounts had been frozen and that he could not make any payments.

22. After several more promises from DeHaven that payment was forthcoming, Tattersalls retained counsel, Bracher Rawlins, LLP ("Bracher Rawlins") in England to pursue the matter. On or about May 24, 2011, Bracher Rawlins sent a letter to DeHaven again asking for payment.  DeHaven responded on or about May 25, 2011, and claimed that he was in the process of closing a bank loan to pay the outstanding balance and that a lawsuit would prevent him from closing on the bank loan.

23. Bracher Rawlins then responded on or about May 26, 2011 and requested written confirmation from the alleged lender that a loan was under consideration and for any correspondence indicating that DeHaven's accounts had indeed been frozen due to a government investigation.  On the same day, DeHaven replied that

he could not release any documents relating to either the alleged loan or the alleged government investigation.

24. On or about June 1, 2011, Bracher Rawlins reminded DeHaven that Tattersalls still retained title to the horse and that the contract expressly reserved Tattersalls' right to demand possession of the horse.  Pursuant to ¶¶ 6.2 and 6.3 of the Conditions of Sale, Bracher Rawlins made a formal demand that DeHaven deliver up possession of Singapore Lilly.

25. DeHaven did not return Singapore Lilly, nor did he express any intent to do so in his responses to the June 1, 2011 letter. Despite several more letters through June, 2011, DeHaven kept possession of Singapore Lilly, continued to write that he could not produce any documents supporting his excuses for not paying, and failed to pay any amount on the outstanding balance.

26. During this period, DeHaven had taken the horse to a trainer by the name of James Cassidy in Monrovia, California. DeHaven had the horse trained and entered it into at least two races, one on March 13, 2011 at the Santa Anita Racetrack and one at the Hollywood Park Track on June 11, 2011. At no time did Tattersalls ever give permission for DeHaven to enter Singapore Lilly into any races.

## FIRST CLAIM FOR RELIEF FOR
## BREACH OF CONTRACT

27. Plaintiff realleges Paragraphs 1 through 26 of this Complaint as if fully set forth herein.

28. DeHaven and Tattersalls entered into a contract whereby DeHaven agreed to pay £220,500 ($357,210) in addition to any applicable VAT in exchange for Singapore Lilly. On or about October 10, 2010, DeHaven signed a form indicating

that he had read and accepted the Tattersalls Conditions of Sale which governed all Tattersalls auctions. On or about November 24, 2010, DeHaven entered into an agreement with Troeller appointing him as DeHaven's authorized agent for all matters relating to the purchase of horses at Tattersalls' December Sales 2010.

29. The December Sales auction took place on or about November 29, 2010, whereby Troeller, acting on behalf of DeHaven, made the highest bid of 210,000 Guineas (£220,500) ($357,210) for Singapore Lilly. Shortly after the sale, Troeller signed a purchase confirmation form, whereby DeHaven, acting through Troeller, agreed to pay for the horse in a manner consistent with the Tattersalls Conditions of Sale and to follow all terms set forth in the Conditions of Sale. As set forth in the Contract, this included the 210,000 Guineas (£220,500) ($357,210) bid price and the £38,587.50 ($62,511.75) VAT for a total of £259,087.50 ($419,721.75).

30. The agreed Conditions of Sale stated that, until the purchase price had been paid in full, Tattersalls would retain title in the horse and that it was only in Tattersalls' absolute discretion that the purchaser was permitted to take possession of the horse. See Exhibit 1, ¶¶ 6.1 and 6.2. Further, the agreed Conditions of Sale stated that until title had passed, the purchaser is prohibited from entering the horse in any race recognized by any racing authority. See Exhibit 1 ¶6.2. Finally, the Conditions of Sale stated that, until title had passed, the purchaser is obligated to deliver possession of the horse upon Tattersalls' demand or inform any third party in possession to hold the horse until receiving instructions exclusively from Tattersalls. See Exhibit 1 ¶6.3.

31. Tattersalls did all of the significant duties it was obligated to perform under the agreed Conditions of Sale, as it was only required to provide title and possession of the horse upon full payment of the contract price. Tattersalls, as a matter of goodwill, permitted DeHaven to take possession of Singapore Lilly.

Because DeHaven had taken the horse outside of the European Union, the transaction was no longer subject to the VAT and Tattersalls credited £38,587.50 ($62,511.75) to DeHaven's account.

32. As of the filing of this Complaint, DeHaven has not paid the full purchase price of £220,500 ($357,210), plus interest which constitutes a material breach of the agreed Conditions of Sale for not adhering to the terms stated in ¶5.1 thereof. Also, DeHaven materially breached the agreed Conditions of Sale by not adhering to the terms stated in ¶6.3 thereof when he refused to return Singapore Lilly when Tattersalls requested its return on June 1, 2011. Lastly, DeHaven materially breached the agreed Conditions of Sale when he entered Singapore Lilly in horse races on March 13, 2011 and June 11, 2011, which is in direct violation of ¶6.2 of the Contract.

33. The agreed Conditions of Sale also provide that, if Tattersalls resells the horse, DeHaven is liable for the difference between the purchase price plus interest thereon and the price agreed on resale after deduction of expenses incurred in the sale. *See* Exhibit 1, ¶7.1. DeHaven is also liable for expenses, including legal costs, incurred in recovering Singapore Lilly and keeping her for a reasonable period thereafter, including the cost of keeping, training, and transporting Singapore Lilly. *See* Exhibit 1, ¶7.2. Where the contract specifically provides for attorney's fees and costs, such damages may be awarded to the prevailing party. California <u>Civil Code</u> §1717.

34. In short: (1) DeHaven and Tattersalls entered into an agreement subject to Tattersalls' Conditions of Sale; (2) Tattersalls fulfilled its obligations under the Conditions of Sale by providing Singapore Lilly to DeHaven based on DeHaven's promise to pay the full purchase price; (3) all the conditions required for DeHaven's performance had occurred; (4) DeHaven breached the contract by

**COMPLAINT**

9

never paying the agreed upon purchase price for Singapore Lilly and failing to return Singapore Lilly when asked by Tattersalls to do so as required by the Conditions of Sale; and (5) DeHaven's failure to comply with the Conditions of Sale has harmed Tattersalls.

35. As a direct and proximate result of the breach of contract herein alleged Tattersalls has been damaged in the amount of £220,500 ($357,210), plus interest and additional contract damages according to proof.

36. Alternatively, Tattersalls seeks replevin as Tattersalls retained title and a possessory right to the horse prior to permitting DeHaven to take possession. Tattersalls is entitled to an order that DeHaven deliver Singapore Lilly and/or an order that DeHaven instruct any third party in possession of Singapore Lilly to hold Singapore Lilly until receiving further instructions exclusively from Tattersalls. Tattersalls also seeks damages in amount of the difference between the unpaid balance of the Purchase Price and the price on resale of the horse, pursuant to the express terms of ¶7.1 of the agreed Conditions of Sale. Further, pursuant to Civil Code §1717 and the express terms of ¶7.2 of the agreed Conditions of Sale, Tattersalls seeks all expenses incurred in recovering Singapore Lilly.

## SECOND CLAIM FOR RELIEF FOR SPECIFIC PERFORMANCE

37. Plaintiff realleges Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. On or about October 10,2010, DeHaven signed a form indicating that he had read and accepted the Conditions of Sale (the "Acknowledgment") which set forth the terms governing all auction transactions with Tattersalls.  See Exhibit 1. On or about November 29, 2010 DeHaven purchased Singapore Lilly at a

Tattersalls auction and his authorized agent, Gordian Troeller, signed a purchase confirmation on behalf of DeHaven. See Exhibit 2. By the terms of the purchase confirmation, DeHaven agreed that the purchase of the horse was made subject to Tattersalls Conditions of Sale. By the terms of both agreements DeHaven agreed to pay the full amount of the purchase price (Exhibit 1 at ¶5.1) and Tattersalls agreed to deliver title to Singapore Lilly when DeHaven paid the full purchase price (Exhibit 1 at ¶6.2). Also under the contract Tattersalls had the right to demand that DeHaven deliver possession of Singapore Lilly if Tattersalls still retained title to Singapore Lilly because of DeHaven's failure to pay the full purchase price (Exhibit 1 at ¶6.3).

39. The consideration of delivering title and possession of Singapore Lilly to Dehaven upon payment of the full purchase price was adequate, fair, and reasonable.

40. Plaintiff went beyond required performance of all conditions, covenants, and promises required by him when he delivered Singapore Lilly to DeHaven prior to DeHaven paying the full purchase price for Singapore Lilly.

41. DeHaven has failed and refused to, and continues to fail and refuse, to perform the required conditions of the contract requiring him to pay the full purchase price for Singapore Lilly and to return Singapore Lilly to Tattersalls if requested to do so prior to paying the full purchase price. DeHaven materially and intentionally breached the contract between the parties by failing to perform the two described required conditions.

42. Plaintiff has no adequate remedy at law because Singapore Lilly is a unique product that there is no substitute for. Furthermore, DeHaven has continually refused to pay Plaintiff when requested to do so and also refuses to provide any proof that he does have adequate finances to pay for Singapore Lilly because his

**COMPLAINT**

11

assets are being frozen as a result of a government investigation.  Also, Defendant has repeatedly threatened to file for bankruptcy when Plaintiff has demanded payment.  Defendant's behavior points to a likelihood to be insolvent at the completion of trial and therefore any monetary remedy available at trial to Tattersalls would be inadequate.

43. Plaintiff is entitled to specific performance of the terms, conditions, and provisions of the agreements described in paragraph 36 by court decree, among other things, ordering Defendant to return possession of Singapore Lilly to Plaintiff and/or instruct any third party in possession of Singapore Lilly to hold Singapore Lilly until receiving further instructions exclusively from Tattersalls.

## THIRD CLAIM FOR RELIEF FOR
## UNJUST ENRICHMENT

44. Plaintiff realleges Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Tattersalls permitted DeHaven to take possession of Singapore Lilly on the understanding that DeHaven would pay the £220,500 ($357,210) purchase price of the horse. Tattersalls made it clear that the horse was not given gratuitously and that payment was expected in exchange for Singapore Lilly. DeHaven accepted the horse and took it out of the country without ever paying Tattersalls. Therefore, DeHaven has been unjustly enriched by keeping Singapore Lilly without having paid anything to the rightful owner.

46. DeHaven has therefore been unjustly enriched in the amount of £220,500 ($357,210), plus interest.

## FOURTH CLAIM FOR RELIEF FOR

---

**COMPLAINT**

12

# CONVERSION

47. Plaintiff realleges Paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. At all relevant times, Tattersalls was and continues to be the owner of Singapore Lilly. The agreed Conditions of Sale specifically stated that title to Singapore Lilly would not pass to DeHaven until the full purchase price had been paid. Tattersalls only permitted DeHaven to take possession of Singapore Lilly at its absolute discretion, as expressly stated in the agreed Conditions of Sale, and required DeHaven to deliver up possession at Tattersalls' demand.

49. DeHaven has possessed Singapore Lilly from about November 29, 2010 to June 1, 2011 with Tattersalls' permission. By sending a written demand to DeHaven for return of the horse on June 1, 2011, Tattersalls revoked its consent to let DeHaven possess Singapore Lilly.

50. By refusing to return Singapore Lilly, and by keeping her in another country, DeHaven has thereby prevented Tattersalls from having access to Singapore Lilly since June 1, 2011. Tattersalls therefore has been unable to resell Singapore Lilly and has been harmed as a result. In short: (1) under *the Conditions of Sale* Tattersalls had title and ownership of Singapore Lilly; (2) DeHaven intentionally prevented Tattersalls from having access to Singapore Lilly since June 1, 2011 by refusing to return the horse; (3) Tattersalls did not consent to DeHaven's continued possession by repeatedly demanding the return of the horse; (4) Tattersalls was harmed, as discussed; and (5) DeHaven's conduct was a substantial factor in causing Tattersalls' harm.

51. DeHaven's continued possession of Singapore Lilly has harmed Tattersalls in the amount of:

(a) Singapore Lilly's current resale value; and

---

**COMPLAINT**

13

(b) Singapore Lilly's earning potential as a racehorse from June 1, 2011 until final judgment.

## FIFTH CLAIM FOR RELIEF FOR
## TRESPASS TO CHATTELS

52. Plaintiff realleges Paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. At all relevant times, Tattersalls was and continues to be the owner of Singapore Lilly. The agreed Conditions of Sale specifically stated that title to Singapore Lilly would not pass to DeHaven until the full purchase price had been paid. As stated in the agreed Conditions of Sale, Tattersalls only permitted DeHaven to take possession of Singapore Lilly at its absolute discretion, and required DeHaven to deliver up possession at Tattersalls' demand.

54. DeHaven received Singapore Lilly on or shortly after November 29, 2010 and Tattersalls initially consented to DeHaven's possession. DeHaven's lawful possession was conditioned on him making full payment to Tattersalls.  When no payment was made, Tattersalls demanded that DeHaven return the horse on June 1, 2011, thereby ending Tattersalls' consent. DeHaven's lawful possession ended from that point on to the present.

55. By refusing to return Singapore Lilly, and by keeping her in another country, DeHaven has thereby prevented Tattersalls from having access to Singapore Lilly since June 1. Tattersalls therefore has been unable to resell Singapore Lilly and has been harmed as a result. In short: (1) under *the Conditions of Sale* Tattersalls had title and ownership of Singapore Lilly; (2) DeHaven intentionally interfered with Tattersall's use or possession of Singapore Lilly since June 1, 2011; (3) Tattersalls did not consent to DeHaven's continued possession;

(4) Tattersalls was harmed, as discussed; and (5) DeHaven's conduct was a substantial factor in causing Tattersalls' harm.

56. DeHaven's continued possession of Singapore Lilly has harmed Tattersalls in the amount of:

(a) Singapore Lilly's diminished value; and

(b) Singapore Lilly's earning potential as a racehorse from June 1, 2011 until final judgment.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment against Defendant as follows:

**As to the First Claim for Relief for Breach of Contract:**

1. For contract damages according to proof; or alternatively

2. For replevin of Singapore Lilly and/or an order that DeHaven instruct any third party in possession of Singapore Lilly to hold Singapore Lilly until receiving further instructions exclusively from Tattersalls;

3. Expenses incurred in recovering Singapore Lilly pursuant to Civil Code §1717; and

4. Damages in the amount of the difference between the Purchase Price and the resale price.

**As to the Second Claim for Relief for Specific Performance:**

1. For specific recovery of Singapore Lilly and/or an order that DeHaven instruct any third party in possession of Singapore Lilly to hold Singapore Lilly until receiving further instructions exclusively from Tattersalls; and

2. For attorneys fees and interest, pursuant to Civil Code §3336

**As to the Third Claim for Relief for Unjust Enrichment:**

1. For restitution damages in the amount of £220,500 ($357,210 or the equivalent based on the exchange rate at judgment) plus interest for unjust enrichment and

2. For all prize money obtained by Defendant for entering Singapore Lilly into any race authorized by any racing authority.

**As to the Fourth Claim for Relief for Conversion:**

1. For specific recovery of Singapore Lilly and

2. Damages for the detention of Singapore Lilly or, alternatively:

3. For general damages in the amount of £220,500 ($357,210 or the equivalent based on the exchange rate at judgment) plus interest and

4. For attorneys fees and interest, pursuant to Civil Code §3336

**As to the Fifth Claim for Relief for Trespass to Chattels:**

1. For specific recovery of Singapore Lilly and

2. For special damages in the amount of Singapore Lilly's diminished value and lost earning potential

4. For attorneys fees and interest, pursuant to Civil Code §3336

**As to all Claims for Relief:**

1. For interest, prejudgment interest, and post-judgment interest according to proof at trial;

2. For costs of suit; and

3. For such additional and further relief which the court deems just and proper.

DATED: July 29, 2011

Respectfully submitted,
COURTEAU & ASSOCIATES
DIANA L. COURTEAU
NEIL M. KATSUYAMA

---

**COMPLAINT**

16

By
DIANA L. COURTEAU
NEIL M. KATSUYAMA
Attorneys for Plaintiff
TATTERSALLS LTD.

**COMPLAINT**

17

# EXHIBIT 1

# Notices to Purchasers

**These Conditions of Sale apply to all Lots sold at Tattersalls Bloodstock Sales 2010 July Sale onwards. Tattersalls draw your attention to the Notices to Purchasers, Guide to Cataloguing Details and Bloodstock Industry Code of Practice printed in each catalogue and to the Guide to Sales booklet available at the Main Sales Office. Please note that Condition 23. (Drugs) has been amended, condition 24 incorporated therein and subsequent Conditions renumbered.**

**1. Parties**

1.1 The Purchaser shall be the highest bidder acceptable to the Auctioneer subject to the right reserved by TATTERSALLS to fix a minimum selling price at all or any Sales and subject to any reserve price.

1.2 The Vendor shall be the person or persons stated in TATTERSALLS sales entry form to be the owner or owners of the Lot.

**2. Conduct of Sale**

2.1 All Lots offered for sale will be subject to a reserve price which shall be either the minimum selling price or any higher reserve price in respect of which TATTERSALLS have received written notification from the Vendor prior to the time at which the Lot is put up for auction.

2.2 As provided for by Law a seller of a Lot OR any one person on his behalf may bid for that Lot at the auction. The seller shall mean the Vendor or, if different, the owner. Where however a Lot is stated to be "Partnership Property" any partner, syndicate member, co-owner or other person interested there in may bid on his own behalf either personally or through an agent.

2.3 The Auctioneer is the sole arbiter as to the existence or otherwise of any dispute during and/or in connection with the conduct of the sale and if any such dispute arises the Lot so disputed shall be immediately put up again and re-sold.

2.4 The Auctioneer reserves the right without giving any reason therefor to reject or ignore any or all bids.

2.5 TATTERSALLS reserves the right to withdraw any Lot before or during any Sale without giving any reason therefore.

2.6 It is the Vendor's duty to ensure that written notification of any reserve price greater than the minimum selling price is received by TATTERSALLS prior to the time at which the Lot is put up for auction.

2.7 Online bidding facilities may be provided by TATTERSALLS and, where provided, their use shall be subject both to these Conditions of Sale and to TATTERSALLS' Online Terms of Business. Vendors and bidders are strongly advised to read these Conditions of Sale and TATTERSALLS' Online Terms of Business.

**3. Commission and Fees**

3.1 An entry fee is payable to TATTERSALLS by the Vendor in respect of each Lot entered and catalogued.

3.2 Commission is payable to TATTERSALLS by the Vendor at the rate of 5% of the price of each Lot whether:

(a) sold or bought in by auction at TATTERSALLS Sales, or

(b) sold otherwise than by auction at TATTERSALLS Sales between the date of publication of the catalogue for the Sale in which the Lot was entered and 28 days after the last day of that Sale. Provided that for the purpose of sub-condition (b) above TATTERSALLS reserves the right to substitute a fair price for any sale price notified to it or to determine a fair price when no sale price is notified to it. Provided also that where a Lot is bought-in 100% by the Vendor and

(i) TATTERSALLS receive written notification to that effect by the end of selling on the day of the buy-in, and

(ii) the Vendor instructs TATTERSALLS to publish the Lot as bought-in, then the rate of commission is reduced to 2.5% unless the Lot was bought-in online in which event the rate of commission remains at 5%. Full Commission is to be paid by the Vendor to TATTERSALLS on demand in respect of any Lot returnable and returned to the Vendor.



3.3 An Auction fee is payable to TATTERSALLS by the Vendor at the rate of 2.5% of any reserve price of any Lot. However, where the reserve price is 10,000 guineas or less no fee will be charged.

3.4 A withdrawal fee is payable to TATTERSALLS by the Vendor in respect of any Lot which is entered and catalogued for a Sale and which is withdrawn prior to the time at which it is due to be sold in the Sale unless a Veterinary Certificate to TATTERSALLS' satisfaction is produced or unless commission is payable under sub-condition 3.2(b).

3.5 Commission and Fees are subject to VAT or equivalent where applicable.

## 4. Bidding

The Auction will be conducted in Guineas. Subject always to the discretion of the Auctioneer no person to advance less than 20 Guineas up to 1000 Guineas; 50 Guineas up to 2,000 Guineas; 100 Guineas up to 5,000 Guineas; 200 Guineas up to 10,000 Guineas; 500 Guineas up to 20,000 Guineas; 1,000 Guineas up to 50,000 Guineas; 2,000 Guineas up to 100,000 Guineas; 5,000 Guineas up to 200,000 Guineas; 10,000 Guineas up to 500,000 Guineas, and 20,000 Guineas thereafter.

## 5. Payment by Purchasers

5.1 The Purchaser of each Lot shall:

(a)  Immediately after the purchase of a Lot

    (i)  sign the form of Purchase Confirmation supplied by TATTERSALLS

    (ii) give his name, address and proof of identity to TATTERSALLS if so required, and

    (iii) pay the full amount of the price bid for the Lot together with VAT thereon if applicable ('the purchase price') by cash or acceptable banker's draft to TATTERSALLS

    (b)  take away at his own expense every Lot purchased by him, the day following the sale of that Lot or as directed in the catalogue.

5.2 If the Purchaser shall fail to comply with any of the conditions set out in 5.1(a) TATTERSALLS may retain possession of and resell the Lot and any progeny born after the Sale to a Lot described as "believed in foal" (hereafter "its Progeny") either immediately or otherwise by public or private sale.

5.3 If the Purchaser shall fail to pay to TATTERSALLS the Purchase Price and any interest due thereon pursuant to these conditions then, save where TATTERSALLS shall have exercised its rights under sub-condition 5.2 or sub-condition 6.5, TATTERSALLS shall be entitled to sue for the full amount of the Purchase Price and interest thereon. As between TATTERSALLS and the Vendor TATTERSALLS shall be under no duty to sue and nothing which it does or does not shall affect the right of the Vendor to enforce any right he may have against the Purchaser.

5.4 Unless there is in force a Purchasers Authorisation accepted in writing by TATTERSALLS the highest bidder in the ring and any principal for whom he may be acting shall be jointly and severally liable under the contract of sale and under these Conditions of Sale.

## 6. Title and Possession

6.1 TATTERSALLS may at its absolute discretion permit the Purchaser to take away a Lot notwithstanding that the Purchaser has not complied with the obligation immediately to pay the Purchase Price pursuant to 5.1(a)(iii).

If TATTERSALLS so permits the Purchaser to take away a Lot it does so as a matter of grace and the Purchaser shall remain liable to pay the Purchase Price as aforesaid.

6.2 The property in a Lot and its Progeny (if any) shall not pass to the Purchaser or any principal for whom he is acting until the Purchase Price has been paid in full together with any interest due thereon pursuant to these Conditions. The Lot and its Progeny (if any) shall be at the Purchaser's risk in all respects from the fall of the hammer. Until the Purchase Price of a Lot has been paid in full together with any interest due thereon pursuant to these Conditions, the Purchaser and/or his principal shall not whether acting by himself, his servants, agents or otherwise howsoever enter, or cause or permit the said Lot to be entered for or to run in or otherwise participate in a race recognised by any Racing Authority unless TATTERSALLS' prior written consent has been obtained.

6.3 At any time until property in a Lot and its Progeny (if any) has passed to the Purchaser or any principal for whom he is acting the Purchaser and/or his principal shall forthwith, on demand by TATTERSALLS (a) deliver up possession of the Lot and its Progeny (if any) to TATTERSALLS or (b) inform TATTERSALLS of the name and address of any third party in possession of the Lot and its Progeny (if any) and irrevocably instruct that third party to hold the Lot and its Progeny (if any) to the exclusive order of TATTERSALLS and provide written evidence to TATTERSALLS satisfaction that such instruction has been given. Upon a demand being made by TATTERSALLS under this sub-condition, any

notices to purchasers



licence which the Purchaser and/or his principal may have to sell the Lot and/or its Progeny shall forthwith determine.

6.4 If the Purchaser and/or his principal fail to comply with a demand for delivery up of a Lot and its Progeny (if any) made under sub-condition 6.3, TATTERSALLS may enter upon any premises owned, occupied or controlled by the Purchaser and/or his principal where the Lot and/or its Progeny are situated to repossess the Lot and its Progeny (if any) at any time between 9am and 6pm on any day.

6.5 At any time after making a demand pursuant to sub-condition 6.3 above TATTERSALLS may resell any Lot and its Progeny (if any) and such sale may be held immediately or otherwise by public or private sale.

## 7. Purchaser's liability after resale

7.1 (a) Subject to paragraph (c) below, where TATTERSALLS resells a Lot and/or its Progeny pursuant to a power to resell it under any provision of these Conditions, the Purchaser shall be liable to pay the difference between (i) the unpaid balance of the Purchase Price together with interest due thereon pursuant to these Conditions up to the date of resale and (ii) the price agreed on the resale (if lower) after deduction of any expenses incurred in the sale. If a higher price is agreed on the resale, TATTERSALLS shall be entitled to keep the full amount paid.

(b) TATTERSALLS shall be entitled to sue in respect of that liability as soon as the contract for resale is made (whether or not payment has been made or is yet due under that contract).

(c) If the purchaser under the contract of resale defaults, the Purchaser shall remain liable for (i) the unpaid balance of the Purchase Price together with interest due thereon pursuant to these Conditions less (ii) such sum, if any, as is paid under the contract of resale.

7.2 The Purchaser shall also be liable to pay TATTERSALLS any expense (including legal costs) incurred in recovering any Lot and/or its Progeny (if any) pursuant to these Conditions and any expense incurred for a reasonable period thereafter in connection with the Lot and/or its Progeny including the cost of keeping, training, transporting and/or insuring the Lot and/or its Progeny and/or engaging any veterinarian, farrier or other person for the purpose of treating the Lot and/or its Progeny.

7.3 The Purchaser shall be liable to pay interest on all sums due under this Condition at the rate provided for in these Conditions.

7.4 TATTERSALLS shall be entitled to sue for any sum due under this Condition. As between TATTERSALLS and the Vendor TATTERSALLS shall be under no duty to sue and nothing which it does or does not do shall affect the right of the Vendor to enforce any right he may have against the Purchaser.

## 8. Responsibility for Horses

8.1 Each Lot shall be at the Vendor's risk from the time of arrival for the period the Lot shall be at Park Paddocks (including Terrace House Yard) or outside standing (hereinafter collectively called "the Premises"), unless such Lot shall have been sold, in which case such Lot shall be at the Purchaser's risk in all respects from the Fall of the Hammer, or time of sale, if sold privately.

8.2 TATTERSALLS has a general right to move a Lot between different parts of the Premises. TATTERSALLS shall incur no liability in respect of or in connection with any loss of or harm sustained by a Lot (including theft, death or injury) at any time whilst on the Premises or in transit between different parts of the Premises.

8.3 TATTERSALLS shall not be liable for any loss or damage caused by any Lot whether by disease, accident or otherwise whilst the said Lot is on the Premises or in transit between different parts of the Premises save that nothing in this subcondition shall be taken as excluding or restricting or as attempting to exclude or restrict TATTERSALLS' liability for death or personal injury resulting from negligence as defined in the Unfair Contract Terms Act 1977.

8.4 TATTERSALLS reserve the right to examine any Lot and/or isolate any Lot and/or refuse any Lot entry to or require the removal of any Lot from the Premises where in TATTERSALLS discretion any such Lot presents or appears to present a danger to persons, property or other bloodstock. TATTERSALLS shall incur no liability in the event of TATTERSALLS exercising its rights under this sub-condition.

8.5 No Lot shall be removed from the Premises without a written order from TATTERSALLS. For the avoidance of doubt, removal of a Lot from Park Paddocks (including Terrace House Yard) to any outside standing by TATTERSALLS staff shall not constitute removal from the Premises for the purpose of these Conditions of Sale.

## 9. Vendors

9.1 The Vendor shall be entitled to receive the proceeds of sale of each Lot sold (less any commission and fees due) on but not before the 35th day following the last day of each Sale provided that:

(a) TATTERSALLS shall have received the full amount of the purchase price or released the Lot from the Premises and

11

(b) TATTERSALLS shall not have been notified that a dispute has arisen in respect of or in connection with payment for the Lot and/or the proceeds of sale thereof whether under these Conditions of Sale or otherwise howsoever and

(c) TATTERSALLS shall not have granted an extension of time for lodgement of a Veterinary Certificate pursuant to Condition 11. TATTERSALLS shall incur no liability in the event of TATTERSALLS withholding payment pursuant to this Condition and the Vendor expressly acknowledges that, notwithstanding the provisions of Condition 5, TATTERSALLS is entitled to release a Lot from its premises without first having obtained payment therefor.

**9.2** In any case where TATTERSALLS shall have received the purchase monies from the Purchaser but shall have been notified of a dispute within the meaning of Condition 9.1(b) it will account for the said monies when the said dispute shall have been resolved either by agreement or, failing agreement, by court proceedings.

**9.3** Release of a Lot by a Vendor or his Agent without a written order from TATTERSALLS shall not be deemed release by TATTERSALLS within the meaning of this Condition.

**9.4** Settlement will only be made against a written application by or on behalf of the Vendor which has been accepted by TATTERSALLS.

**9.5** TATTERSALLS shall be under no obligation to place the proceeds of sale on deposit pending payment out by them.

**9.6** All payments are made and/or sent at the risk of the Vendor and, if different, the payee.

**9.7** Where pursuant to this Condition TATTERSALLS has paid to the Vendor or credited his account with the net proceeds of sale of a Lot then the Vendor shall, if so required by TATTERSALLS, assign to it by way of legal assignment (or by any other mode of assignment required by TATTERSALLS) all and any of his rights against the Purchaser arising out of the contract of sale of the Lot and to the extent that property in the Lot has been retained by the Vendor, that property. Save as provided aforesaid the Vendor shall not assign any rights or obligations under his agreement with TATTERSALLS.

**9.8** Where the Purchaser is disputing his obligation to pay for the Lot the Vendor shall, save where TATTERSALLS has exercised its right under Condition 9.7 above, if so required by TATTERSALLS, repay to TATTERSALLS on demand any payment made by TATTERSALLS to the Vendor in respect of the net proceeds of sale of the Lot.

**9.9** Where the Purchaser is disputing his obligation to pay for a Lot the Vendor shall, if so required by TATTERSALLS, promptly provide and use best endeavours to procure that its servants and agents promptly provide to TATTERSALLS and its advisers such full co-operation, documentation and assistance as TATTERSALLS may request in order to investigate the subject matter of the dispute.

**9.10** Where there has been any change in the ownership of a Lot entered for sale with TATTERSALLS between the date of the sales entry form and the time at which the Lot is due to be put up for auction the Vendor shall forthwith notify TATTERSALLS of this fact in writing and of the amount of the sale price and use his best endeavours to ensure that the new owner(s) forthwith notify TATTERSALLS whether it is his wish to proceed with a sale of the Lot at the auction for which it is entered and, if so, to execute and deliver to TATTERSALLS a properly completed sales entry form.

**9.11** The Vendor shall indemnify TATTERSALLS in respect of any loss suffered or costs, disbursements or expenses incurred bona fide by TATTERSALLS by reason of bringing or defending any proceedings (including but not limited to any adverse costs awarded against TATTERSALLS) or otherwise howsoever which arise whether directly or indirectly from any act or omission by the Vendor in connection with the sale of a Lot whether or not such act or omission be a breach of his contract with TATTERSALLS.

## 10.   Description and Health

Where certificates, notices in writing and/or any other documents are required to be received by TATTERSALLS under these Conditions of Sale, that requirement can only be satisfied by delivering them to TATTERSALLS at their Newmarket offices.

**10.1** Each Lot must be registered with a Stud Book Authority approved by the International Stud Book Committee and if not so registered it is returnable in accordance with Condition 11 hereof.

**10.2** A Stallion is a male horse at stud. A Gelding is a male horse which has been castrated (i.e. had both testicles removed in their entirety). A Colt is a male horse up to and including the age of four years, provided that he is not properly describable as a Stallion or a Gelding. A Horse is a male horse five years of age or over not properly describable as a Stallion or a Gelding. The description Stallion or Colt or Horse does not exclude a rig or crypt-orchid (the term rig or crypt-orchid applies to male horses in which one or both testes do not descend into the scrotum from the abdomen at the usual time). If a male horse is not properly described he is returnable in accordance with this and Condition 11 hereof provided always that

*notices to purchasers*

(12)

the Purchaser may only return the Lot if:

    (a) TATTERSALLS has received a notice in writing from the Purchaser before 5.00 p.m. on the 7th day after the day on which the Lot was sold that he requires an examination to determine whether the Lot has been misdescribed under this Condition.

    (b) The Lot has been returned to TATTERSALLS at Park Paddocks or any other premises designated by TATTERSALLS by the Purchaser by 5.00 p.m. on the 14th day after the day on which the Lot was sold.

    (c) TATTERSALLS has received a certificate in writing from a Veterinary Surgeon of the Purchaser's choice before 5.00 p.m. on the 14th day after the day on which the Lot was sold stating that the Lot has been misdescribed under this Condition.

    (d) TATTERSALLS has received notice in writing from the Purchaser contending that the Lot has been misdescribed under this Condition before 5.00 p.m. on the 14th day after the day on which the Lot was sold.

**10.3** A Filly should only be so described up to and including the age of four years. Thereafter she must be described as a Mare. If at any time before reaching five years she is covered she must subsequently at all times be described as a Mare. If a Filly or a Mare is not properly described she is returnable in accordance with Condition 11 hereof. For all Mares there must be given particulars of all coverings. If a Mare has subsequent to any such covering slipped foal the fact must be stated and if not stated or the particulars of coverings are not given as required the Mare is returnable in accordance with Condition 11 hereof.

**10.4** Any Mare described as "believed in foal" must have a Covering Certificate "lodged with TATTERSALLS". A Covering Certificate is only to be regarded as having been "lodged with TATTERSALLS" where, prior to the time of sale of the Mare, either the Covering Certificate has been deposited at TATTERSALLS Office in Park Paddocks or TATTERSALLS has been notified in writing by a Stud Book Authority approved by the International Stud Book Committee that the covering has been registered with it and is recorded electronically. Where, in respect of a Mare described as "believed in foal" a Covering Certificate has not been "lodged with TATTERSALLS" as aforesaid, such Mare is returnable in accordance with this and Condition 11 unless:

    (a) an announcement is made from the Rostrum that the Covering Certificate has not been lodged, and

    (b) the Covering Certificate or written notification as aforesaid from a Stud Book Authority approved by the International Stud Book Committee is received by TATTERSALLS by 5.00 p.m. on the 14th day after the day on which the Lot was sold. Provided always that the Purchaser may only return the Mare if, by 5.00 p.m. on the 21st day after the day on which the Mare was sold, he has:

    (a) returned the Mare to TATTERSALLS at Park Paddocks or any other premises designated by TATTERSALLS, and

    (b) TATTERSALLS has received a notice in writing from the Purchaser of his contention that a Covering Certificate for the Mare had not been "lodged with TATTERSALLS" within the meaning of this sub-condition.

**10.5** Any Mare described as "believed in foal" is returnable in accordance with this and Condition 11 hereof if found to be barren at the time of sale, provided always that the Purchaser may only return the Mare if:

    (a) TATTERSALLS has received a certificate in writing from a Veterinary Surgeon of the Purchaser's choice before 5.00 p.m. on the second day after the day on which the Mare was sold alleging the Mare to be barren at the time of sale.

    (b) The Mare has not been removed from the Premises. For the avoidance of doubt removal of a Lot from Park Paddocks (including Terrace House Yard) to any outside standing by TATTERSALLS staff shall not constitute removal from the Premises for the purpose of these Conditions of Sale.

**10.6** Any Lot

    (a) which is a Wind-sucker (i.e. habitually gulps or swallows air whether in association with grasping fixed objects with incisor teeth or not) is returnable in accordance with Condition 11 unless described without qualification as a Windsucker, Crib-biter or Cribber in which event the Lot is *not* returnable.

    (b) which has been operated on for the correction of Wind-sucking as defined above, including Crib-biting, is returnable in accordance with Condition 11 unless so described.

    (c) Crib-biters and Cribbers are not returnable unless the Crib-biting is associated with Wind-sucking in which case the Lot is returnable as a Wind-sucker unless it is described without qualification as a Wind-sucker, Crib-biter or Cribber.

notices to purchasers

(13)

**10.7** Any Lot
(a) which is an habitual Weaver (i.e. habitually swings its head and neck to and fro and transfers weight from one forelimb to the other alternately) or
(b) which is an habitual Boxwalker (i.e. habitually walks either backwards and forwards or round and round the box repeatedly in an aimless manner), is returnable in accordance with this and Condition 11 unless so described, Provided always that the Purchaser may only return the Lot if:
  (a) TATTERSALLS has received a notice in writing from the Purchaser before 5.00 p.m. on the 7th day after the day on which the Lot was sold that he may wish to return the Lot to TATTERSALLS as either an habitualWeaver or an habitual Boxwalker.
  (b) He has returned the Lot to TATTERSALLS at Park Paddocks or any other premises designated by TATTERSALLS by 5.00 p.m. on the 14th day after the day on which the Lot was sold.
  (c) TATTERSALLS has received a certificate in writing from a Veterinary Surgeon of the Purchaser's choice before 5.00 p.m. on the 14th day after the day on which the Lot was sold stating that as a result of observation between 7 and 14 days after the day on which the Lot was sold, it is believed that the Lot is an habitual Weaver or an habitual Boxwalker.
  (d) TATTERSALLS has received a notice in writing from the Purchaser of his contention that the Lot is an habitual Weaver or an habitual Boxwalker before 5.00 p.m. on the 14th day after the day on which the Lot was sold.

**10.8** Any Lot described as a Horse in Training
(a) which is a Whistler and/or Roarer as hereinafter defined is returnable in accordance with Condition 11 unless so described or described as being "heard to make a noise" without qualification. In the case of a Horse in Training a Whistler and/or Roarer is a Lot which can be heard to make a characteristic abnormal inspiratory sound when actively exercised (ridden where possible) and which has Laryngeal Hemiplegia (Recurrent Laryngeal Neuropathy) when examined with the endoscope.
(b) which has been tubed or otherwise operated upon for the correction of Whistling and/or Roaring, is returnable in accordance with Condition 11 unless so described.

**10.9** Any Lot described as a Yearling (other than one sold in a February Sale to which this sub-condition does not apply) and any Lot described as a Two-Year-Old in a February Sale,
(a) which is a Whistler and/or a Roarer as hereinafter defined, or
(b) which has been tubed or otherwise operated upon for the correction of Whistling and/or Roaring, or
(c) which makes an abnormal inspiratory sound when actively exercised and which has (i) rostral displacement of the palatopharyngeal arch (fourth branchial arch defect); or (ii) chondroma or severe arytenoid chondritis; or (iii) cleft palate is returnable in accordance with this and Condition 11 unless so described or described as being "heard to make a noise" without qualification in which event the Lot is not returnable under sub-paragraphs (a), (b) or (c). In the case of a Lot to which this sub-condition applies, a Whistler and/or Roarer is a Lot which can be heard to make a characteristic abnormal inspiratory sound when actively exercised and which has Laryngeal Hemiplegia (Recurrent Laryngeal Neuropathy) when examined with the endoscope. Provided always that the Purchaser may only return the Lot if:
  (a) It has not been removed from the Premises. For the avoidance of doubt removal of a Lot from Park Paddocks (including Terrace House Yard) to any outside standing by TATTERSALLS staff shall not constitute removal from the Premises for the purpose of these Conditions of Sale.
  (b) TATTERSALLS has received a notice in writing from the Purchaser within 24 hours from the Fall of the Hammer that he requires an examination.
  (c) TATTERSALLS has received a certificate in writing from a Veterinary Surgeon of the Purchaser's choice before 5.00 p.m. on the fourth day after the day on which the Lot was sold alleging the Lot to be a Whistler and/or Roarer or to be suffering from one of the conditions stated in Condition 10.9(c).
  (d) TATTERSALLS has received a notice in writing from the Purchaser of his contention that the Lot is a Whistler and/or Roarer or to be suffering from one of the conditions stated in Condition 10.9(c) before 5.00 p.m. on the fourth day after the day on which the Lot was sold.

**10.10** Any Lot which has run at a meeting not recognised by a Racing Authority or is restricted from racing by any Racing Authority and not so described is returnable in accordance with Condition 11 hereof.

**10.11** Save as aforesaid any material misdescription in the catalogue details of any Lot or in any information with regard there to announced from the Auctioneer's Rostrum shall render the Lot returnable in accordance with Condition 11 hereof unless, in either case, corrected by announcement from the Auctioneer's Rostrum.

notices to purchasers

(14)

**11. Lots Returned to TATTERSALLS**

If the Purchaser of any Lot contends that it is returnable to the Vendor under Condition 10 the Lot must be returned to TATTERSALLS with a notice in writing of such contention and in the case of Lots returned to TATTERSALLS under Conditions 10.3, 10.6 and 10.8 with a Veterinary Certificate specifying the nature of the complaint and in the case of Lots returned to TATTERSALLS under Conditions 10.2, 10.4, 10.5, 10.7 and 10.9 as prescribed therein. Where certificates, notices in writing and/or any other documents are required to be received by TATTERSALLS under these Conditions of Sale, that requirement can only be satisfied by delivering them to TATTERSALLS at its Newmarket offices. Lots returned to TATTERSALLS under Condition 10 must be returned to Park Paddocks or any other premises designated by TATTERSALLS and the requisite notices/certificates be received by TATTERSALLS before 5.00 p.m. on the 7th day after the day on which the Lot was sold except for those returned to TATTERSALLS under Conditions 10.2, 10.4, 10.5, 10.7 and 10.9, which must be returned to TATTERSALLS as prescribed therein. However in the case of a return of a Lot to TATTERSALLS under Conditions 10.8 or 10.9 where TATTERSALLS receive a written notice from the Purchaser's Veterinary Surgeon stating that he is unable to give a certificate within the prescribed time on grounds connected with the health or characteristics of the Lot then TATTERSALLS may decide to extend the prescribed time for lodgement of the certificate and, for this purpose, may have regard to the opinion of any Veterinary Surgeon or Surgeons appointed by them. Failure to comply with the provisions of this Condition and Condition 10 shall be an absolute bar to any claim that the Lot is returnable and the Purchaser shall be bound to keep and pay the full amount of the purchase price for the Lot. Where the Purchaser has returned the Lot to TATTERSALLS in accordance with this Condition and Condition 10 and the Vendor does not accept that the Lot is returnable to him TATTERSALLS will decide the dispute under Condition 12.

**12. Resolution Procedures**

Any dispute arising under Conditions 10 and 11 shall be decided by TATTERSALLS in such manner and either without evidence or after hearing evidence of such nature and taken in such manner as TATTERSALLS shall think fit and TATTERSALLS' decision shall be final and binding on both Vendor and Purchaser and TATTERSALLS shall not be responsible for any loss or expense incurred by any party to such dispute. The decision shall be given not later than 21 days from the date of the return of the Lot to TATTERSALLS unless TATTERSALLS is advised by the Veterinary Surgeon or Surgeons appointed by it that a longer period or a different method of testing be necessary due to the health or characteristics of the Lot. In determining whether any Lot is returnable as an habitual Weaver or an habitual Boxwalker under Condition 10.7 TATTERSALLS may have regard to the opinion of any Veterinary Surgeon or Surgeons appointed by it whose opinion shall be given after allowing the Lot to settle in its environment and have adequate exercise. In determining whether any Lot is returnable under Conditions 10.8 and 10.9 respectively TATTERSALLS may have regard to the opinion of any Veterinary Surgeon or Surgeons appointed by it whose opinion shall be given after actively exercising the Lot (a Horse in Training shall be ridden where possible) to hear whether it makes the required abnormal inspiratory sound and examining the Lot with the endoscope to determine if Laryngeal Hemiplegia (Recurrent Laryngeal Neuropathy) or one of the conditions stated in Condition 10.9 (c) be present. A Lot shall only be returnable under Conditions 10.8 or 10.9 if both the required abnormal inspiratory sound and either Laryngeal Hemiplegia (Recurrent Laryngeal Neuropathy) or one of the conditions stated in Condition 10.9 (c) are present. The Purchaser expressly acknowledges that the condition revealed by post-sale examination with the endoscope for which return to the Vendor is allowed is ONLY as set forth in Conditions 10.8 and 10.9 and further acknowledges that there are other conditions which may be revealed by such examination which may affect the desirability of purchasing the Lot but which are NOT grounds for return to the Vendor. The party against whom a decision is given shall:

(a) pay to TATTERSALLS all costs and expenses (including insurance) incurred by it or in connection with the taking of evidence or making the decision

(b) indemnify TATTERSALLS against all costs claims demands actions and expenses arising out of or in connection with such decisions.

The Lot shall be at the Purchaser's risk in all respects until the decision that it is *returnable to the Vendor* is given by TATTERSALLS. If it be decided that the Lot is returnable to the Vendor, the Vendor shall pay to TATTERSALLS on behalf of the Purchaser the cost of returning the Lot to Park Paddocks or any other premises designated by TATTERSALLS under these Conditions of Sale, and the amount of any payment under this Condition shall be fixed by TATTERSALLS whose decision shall be final and binding on all parties to the dispute. No Lot is returnable to the Vendor in any circumstances other than in accordance with this Condition and Conditions 10 and 11 hereof. Unless so returnable the Purchaser shall be bound to keep and pay the full amount of the purchase price for the Lot.

notices to purchasers

(15)

### 13. Responsibility

The Vendor is responsible for the accuracy of all information concerning the pedigree description and health of a Lot. No statement certificate forecast or expression of opinion in respect thereof is or is to be deemed to be in any circumstances a representation, undertaking, warranty by TATTERSALLS or condition of any contract with TATTERSALLS and TATTERSALLS shall in no circumstances become liable to any person in respect thereof. TATTERSALLS reserves the right to require that any notice regarding the pedigree description and health of a Lot must be in writing and lodged at TATTERSALLS' Office in Park Paddocks prior to the sale of the Lot. TATTERSALLS does not warrant that any Lot is eligible for participation in any scheme or race notwithstanding any announcement or notice in a catalogue or otherwise.

### 14 - 18 Purchasers

**14** Purchasers are advised to inspect each Lot and to arrange for inspection of any materials or information deposited in the Repository relating thereto prior to purchase. Purchasers must ensure that the Vendor's approval is obtained before a veterinary inspection is made. All Lots are sold subject to TATTERSALLS' Conditions of Sale and are subject to any announcements that may be made from time to time from the Auctioneer's Rostrum and therefore it is the responsibility of all bidders to be in attendance at the commencement of the sale of a Lot to hear any such announcements. Information appearing on notice and electronic boards in the Main Sales Office and the Sale Ring and anywhere else on TATTERSALLS Premises as defined in Condition of Sale 8.1 is for guidance purposes only and no liability shall attach to TATTERSALLS or the Vendor for any error in or omission from the information so provided. Where a Lot is described as being sold with race entries, the responsibility thereof passes to the Purchaser at Fall of Hammer.

**15** Each Lot is sold as it stands and there is no term implied in any sale that any Lot is of satisfactory quality or is fit for training or any particular purpose.

**16**

**16.1** The Vendor as defined in Condition 1.2 shall remain at all times the Vendor for the purpose of and within the meaning of these Conditions whether or not he was in fact the owner at the time of entry or if he was, notwithstanding any transfer of ownership prior to Fall of Hammer. Such transfer shall not by itself operate as the withdrawal or revocation of any authority to sell.

**16.2** Where TATTERSALLS in its Sales catalogue make a statement as to the ownership of a Lot it does so in good faith and in accordance with the information provided in the sales entry form but it does not thereby make nor does it otherwise make any representation whatsoever, whether express or implied, as to the identity of the owner or owners of any Lot at the time of entry, time of sale or at any other time.

**16.3** Without prejudice to the generality of the foregoing the fact that TATTERSALLS makes no such representation means that it shall not be a term of any contract between TATTERSALLS and a Purchaser (whether condition, warranty or otherwise) that the Lot is at the time of sale or was at the time of entry or

at any other time the property of any particular person or persons and that if a Purchaser purchases a Lot relying on any representation as to the ownership of the Lot at the time of entry, time of sale or at any other time he does so, as far as his contract with TATTERSALLS is concerned, entirely at his own risk and such representation and/or reliance shall not prevent TATTERSALLS being entitled to recover the full amount of the purchase price immediately in accordance with Condition 5.

**16.4** Consistently with and without prejudice to the foregoing in any case where TATTERSALLS is able to procure that title in the Lot passes to the Purchaser the fact, if it be the case, that as at the time of sale it did not have authority to sell shall not prevent TATTERSALLS being entitled to recover the full amount of the purchase price immediately in accordance with Condition 5.

**17** An allegation by a Purchaser that a particular person, whether or not the owner of the Lot for the time being has taken part whether directly or indirectly in the bidding shall not prevent TATTERSALLS being entitled to recover the full amount of the purchase price immediately in accordance with Condition 5.

**18** Further and without prejudice to any other provision of these Conditions TATTERSALLS makes no representation whatsoever, whether express or implied, about, with regard to or in connection with any Lot. A Purchaser must make his own enquiries and exercise his own judgement as to a Lot and its value and if a Purchaser purchases any Lot relying on any representation whether by or on behalf of the Vendor or otherwise howsoever he does so, as far as his contract with TATTERSALLS is concerned, entirely at his own risk and such representation and/or reliance shall not prevent TATTERSALLS being entitled to recover the full amount of the purchase price immediately in accordance with Condition 5.

notices to purchasers



## 19. Repository

**19.1** TATTERSALLS provides a repository facility ("the Repository") in which Vendors may, at their discretion, place pre-Sale X-rays and other stipulated information.

**19.2** Use of the Repository is subject to the terms, conditions and procedures issued by TATTERSALLS from time to time (known as the Repository Rules) and published in this catalogue and available for inspection at Park Paddocks Sales Office and the Repository.

**19.3** The Repository exists for the purpose of facilitating inspection of pre-Sale X-rays and other stipulated information concerning Lots to be offered for sale and its existence and use shall not change any of the Conditions of Sale. In particular deposit of materials and information in the Repository shall not alter or affect the obligation on the Vendor to make announcements concerning the description and health of a Lot as required by Condition of Sale 10.

**19.4** TATTERSALLS does not review the materials or information in the Repository and makes no representation and gives no warranty or assurance of any kind whatsoever to any person regarding the sufficiency, quality, completeness, accuracy or authenticity of the materials or information all of which is the responsibility of the Vendor. Knowledge of the materials or information in the Repository therefore shall not be imputed to TATTERSALLS. TATTERSALLS shall in no circumstances become liable to any person in respect of any loss howsoever arising concerning or relating to the sufficiency, quality, completeness, accuracy or authenticity of the materials or information in the Repository.

**19.5** The Repository may only be used by Vendors, and Veterinary Surgeons appointed by prospective Purchasers all of whom hereby agree to be bound by the Repository Rules in all respects.

## 20. Disputes between Vendor and Purchaser

Where, as between Vendor and Purchaser a dispute has arisen out of or in connection with the sale of any Lot TATTERSALLS shall not be liable to either party in connection therewith and no such dispute shall prevent TATTERSALLS being entitled to recover the full amount of the purchase price immediately in pursuance of Condition 5.

## 21. Withdrawal

TATTERSALLS shall not be liable to any person for any loss alleged to have been suffered as the result of the withdrawal of a Lot from any Sale for any reason.

## 22. Sales Levy

Unless a Vendor or Consignor has notified TATTERSALLS in writing within 14 days from the last day of the Sale that he is unwilling to contribute to a Sales Levy, TATTERSALLS will deduct 0.75% from the sales proceeds of each and every Lot payable to Vendors from the United Kingdom and elsewhere other than the Irish Republic. The Sales Levy will be paid to the Thoroughbred Breeders' Association.

## 23. Drugs

This Condition shall apply where a Lot is described as a Horse in Training, a Horse out of Training, a Yearling or as a Two-Year-Old in a February Sale but not otherwise.

**23.1** A Lot shall be returnable to the Vendor in accordance with this Condition where TATTERSALLS decides in its absolute discretion that a blood/urine sample taken from the said Lot in accordance with this Condition contains the specified level of any of the following proscribed drugs namely,

(a) non-steroidal anti-inflammatory drugs or their metabolites,

(b) exogenous anabolic steroids,

(c) corticosteroids ('the proscribed drugs').

**23.2** A list showing the specified level for each of the proscribed drugs is available upon request made to TATTERSALLS at its Newmarket offices and Purchasers and Vendors are advised to check the current specified levels before purchasing or entering a Lot for sale.

**23.3** A sample will be taken from a Lot in accordance with this Condition where:

(a) the Purchaser, in compliance with sub-condition 23.4 hereof, irrevocably instructs TATTERSALLS to take a sample from the said Lot for the purpose of this Condition and to have the sample tested for the presence of proscribed drugs, and

(b) the Vendor complies with sub-condition 23.5(a) hereof, and

(c) a member of a veterinary team appointed by TATTERSALLS takes a sample from the said Lot while it is in a holding area designated by TATTERSALLS.

**23.4** Where a Purchaser wishes to give an instruction under sub-condition 23.3(a) hereof he shall

do so immediately after the purchase of a Lot and by signing to this effect on the form of Purchase Confirmation supplied by TATTERSALLS who will not accept instructions given in any other way.

23.5  Where an instruction is given by the Purchaser under sub-condition 23.4 hereof:

(a) The Vendor shall deliver the said Lot directly from the Sale Ring to the designated holding area in accordance with TATTERSALLS directions and for this purpose the Purchaser agrees that notwithstanding that risk in the said Lot has passed to him he is not entitled to take possession or control of the said Lot until after the Lot is released from the designated holding area. Where TATTERSALLS decides that the Vendor has failed to deliver the said Lot as aforesaid the said Lot shall be returnable to the Vendor in accordance with this Condition.

(b) If after one hour from the delivery of the Lot to the designated holding area a sample has not been taken from the said Lot notwithstanding that the said veterinary team have used such reasonable endeavours as are commensurate with the circumstances including the number of Lots from which samples are to be taken and their behaviour, the contract of sale shall stand and the Purchaser shall be bound to keep the said Lot and pay the full amount of the purchase price therefor.

23.6  TATTERSALLS shall exercise its absolute discretion in making a decision under this Condition. TATTERSALLS decision shall be given by notice to both Vendor and Purchaser as soon as reasonably possible after the Sale of the said Lot, shall be final and shall be binding on both Vendor and Purchaser and TATTERSALLS shall not be responsible for any loss or expense incurred by any party arising out of its decision.

23.7  The Purchaser expressly acknowledges that a Lot is only returnable to the Vendor under this condition if it is decided by TATTERSALLS that the sample taken from a Lot contains the specified level of any of the proscribed drugs and further acknowledges that the presence of any of the proscribed drugs in the sample at a level below the specified level is not a ground for return of a Lot to the Vendor. Unless so returnable the Purchaser shall be bound to keep and pay the full amount of the purchase price for the Lot.

23.8  (a) Where the Purchaser elects to return the Lot to the Vendor under this Condition such election must be made by returning the Lot to TATTERSALLS at Park Paddocks with a notice in writing of such election within 7 days of the date on which notice of TATTERSALLS decision is given to the Purchaser. Failure to comply with this sub-condition shall be an absolute bar to any claim that the Purchaser is entitled to return the Lot under this Condition and the Purchaser shall be bound to keep the Lot and pay the full amount of the purchase price therefor. Any transport, keep and other costs incurred by the Purchaser in connection with the Lot shall be for the Purchaser's account in any event.

(b) Upon TATTERSALLS having acknowledged receipt of the Purchaser's notice in accordance with sub-condition 23.8(a) hereof TATTERSALLS shall give notice to both Vendor and Purchaser that the contract of sale in respect of the said Lot has been determined.

(c) The Lot shall be at the Purchaser's risk in all respects from Fall of Hammer until notice is given by TATTERSALLS in accordance with sub-condition 23.8(b) hereof. For the avoidance of doubt, in any case where TATTERSALLS has given such notice the Lot is thereafter at the risk of the Vendor.

(d) If the Purchaser has elected to return the Lot to the Vendor in accordance with this Condition the Vendor shall:

(i) pay to TATTERSALLS on invoice a sum equivalent to the commission that would be payable under these Conditions of Sale had the contract of sale not been determined by the Purchaser

(ii) pay to TATTERSALLS on invoice its charge for taking and testing the sample and in making and giving its decision under this Condition

(iii) indemnify TATTERSALLS against all costs claims demands actions and expenses arising out of or in connection with its decision under this Condition.

23.9  Save as provided for in sub-condition 23.8(d) hereof the Purchaser shall pay to TATTERSALLS on invoice its charge for taking and testing the sample and making and giving its decision under this Condition.

23.10  For the avoidance of doubt, time runs for the purposes of the Conditions of Sale generally notwithstanding the Purchaser's instruction for a sample to be taken and tested in accordance with this Condition.

notices to purchasers

(18)

**23.11**

(a) Any notice under this Condition shall be in writing and shall be delivered by hand or sent by first-class post or by fax to the Vendor or to the Purchaser at the address given on the Sales Entry Form or Purchase Confirmation as the case may be, or at their normal address of residence or business. Such notice shall be given or, deemed given on the date of delivery, or the second day after posting or on the day of transmission as the case may be.

(b) For the purposes of sub-condition 23.8(a) such notice in writing shall be delivered to TATTERSALLS at Terrace House and shall not be treated as given unless acknowledged in writing by TATTERSALLS.

**24.** No failure or delay on the part of TATTERSALLS (whether in connection with this or any previous sale) to exercise any right, power or remedy shall operate as a waiver of it, nor shall any partial exercise preclude further exercise of the same or some other right, power or remedy.

**25. Interest**

TATTERSALLS reserves the right to charge interest at the rate of 1.5% per month or part thereof on

(a) the Purchase Price or any part thereof if unpaid from the date of sale and

(b) any other sum due and owing to TATTERSALLS under these Conditions of Sale from the date the liability was incurred or, if different, from the date provided for in these Conditions of Sale. The rate may be varied by notice posted at TATTERSALLS' Office in Park Paddocks during these Sales. Interest will not be charged on accounts cleared within 28 days of the last day of each Sale.

**26. Law**

These Conditions of Sale are to be construed and shall take effect in accordance with English Law and the English Courts shall, unless TATTERSALLS elects otherwise, have exclusive jurisdiction to hear and determine any action arising thereunder.

# Here to help

If you requre any help with making a purchase or any questions regarding the conditions of sale, contact:
MARTIN MITCHELL or email: **martin.mitchell@tattersalls.com**

notices to purchasers

(19)

# NOTICES TO PURCHASERS

Please return your completed form to Tattersalls Ltd by fax (+44 (0)1638 617602)  Or in
person to the Accounts desk in the main sales office before participating in the auction.

Given Name(s)                  *JEFFREY J. DEHAVEN*
Surname
Company Name
Passport / I.D. Number

Residential/Registered         *2683 VIA DE LA VALLE G145*
Address                        *#*

City: *Delmar*  Postcode: *92014*  Country: *USA*

Postal Address
(or as above)                  *SAME AS ABOVE*

City: [        ]  Postcode: [        ]  Country: [        ]

Business Phone                 *858 - 832 - 8444*
Home Phone                     *858 - 832 - 8448*
Mobile Phone                   *805 - 469 - 6800*
Fax Number
Email Address                  *jdh@PRGMAE.com*

Name of Sale Attending
Date of Sale                   *OCT 26 - 29*
Amount of Intended
Purchases (GBP)                *500,000 US. / £320,000*
Intended Method
of Payment                     *WIRE*

Have you purchased previously?  *YES*
(Please indicate which sale)    *MID ATLANTIC (ASIS TIPTON)*
                                *MIDATLANTIC*

I confirm that:
1.   I have read and accept Tattersalls Conditions of Sale (and where appropriate
     any Special Arrangements).
2.   I will not make any purchases until I have received Tattersalls' written
     confirmation that I may do so.

Signature: [signature]                Date: *10/10/2010*

notices to purchasers
payment reference

29

(1)

TATTERSALLS LTD
NEWMARKET
SUFFOLK CB8 9BT

PURCHASE CONFIRMATION

516 c

## PURCHASE CONFIRMATION

Lot No. 1479        **DECEMBER SALE 2010**        Price 210,000 gns

NAME (Please print) GORDYW TREGLLER BLOODSTCC

ADDRESS (Please print) ........................................................

........................................................

POST/ZIP CODE ........................ COUNTRY ........................

I confirm that I am the Purchaser of the above Lot which was purchased subject to the Conditions of Sale.

Name (Please print) ........................ Signed ........................ (Bidder)

## BOUGHT-IN-LOTS
### (Vendor Purchase)

Signed ........................................................

## DESTINATION : Country ........................................................

## PROSCRIBED DRUGS

(i) I irrevocably instruct a member of the Veterinary Team appointed by Tattersalls to take a sample from this Lot for the purposes of Condition of Sale 20 and to have the sample tested for the presence of proscribed drugs.

(ii) I agree that the taking of the sample is entirely at my risk.

(iii) I confirm that Tattersalls decision will be final and binding.

(iv) I agree to pay the charge plus VAT as stated in the catalogue in respect of this request

Signed ........................................................

| OFFICE USE OU · | RUNNER | (20) |

23 NOV 2010 18:55:45

012G 8/05

TATTERSALLS LTD                          INVOICING INSTRUCTION
NEWMARKET
SUFFOLK CB8 9BT

Sale...Dec...............  Lot No. 1479 ...........  Price... 20000 ............

---

**PURCHASER (BIDDER)**

NAME......Gordian Troeller...

ADDRESS..............................................................................

.............................................................................................

.............................................................................................

I hereby request and authorise Tattersalls Ltd to invoice the above mentioned lot direct to the person nominated (nominee) below. I understand and confirm that until Tattersalls Ltd have received full payment from that nominee I remain jointly and severally liable with that nominee for payment.

Bidder's signature........................................... Date..........................................

---

**NOMINEE**

NAME......EJ Dehaven............ 52359

ADDRESS..............................................................................

.............................................................................................

.............................................................................................

In consideration of Tattersalls Ltd agreeing to credit the Nominee's account with / to be opened with Tattersalls Ltd with the sum of £1, I confirm that I will accept an invoice for the above lot ("the Lot") and that I will make payment in accordance with the Tattersalls Ltd Conditions of Sale and that I am jointly and severally liable with the purchaser (bidder) for payment for the Lot and in respect of any other liability in connection with the Lot arising under the said Conditions of Sale.

Nominee's Signature............................. Date..........................................

Name (Please Print)..........................................



# EXHIBIT 2

# THE SOURCE OF A GOOD HORSE

# GORDIAN TROELLER BLOODSTOCK
### 33 BERRYS ROAD: UPPER BUCKLEBURY: BERKS: RG7 6QL
### TEL: (0)1635 869370  FAX: (0)1635 876246 MOBILE: (0)7768 105043
### EMAIL: horsedeal@aol.com
### WEBSITE: gordiantroeller.net

FAX TO: DAVID ANDERSON
        TATTERSALLS

Dear David

Please find attached the 'Appointment of Agent' document duly signed by Mr Jeffrey
DeHaven.

Please could you confirm to me by fax or by Email ( horsedeal@aol.com) that this,
together with his previous credit application etc...) are in order and approved by
Tattersalls

I look forward to seeing you next week

Kind Regards

Gordian Troeller



Nov 10 16:14

24 Nov 10 13:53

p.2

## APPOINTMENT OF AGENT/ PURCHASER'S AUTHORISATION

I, Jeffrey de Haven of Prenae Inc, 2683, Via del La Valle Drive. Del Mar,
California hereby appoint Gordian Troeller of 33 Berrys Road, Upper
Bucklebury : Berkshire: UK
to be my authorised agent to act for me in all matters relating to
the purchase of horses at the December Sales 2010 to be held at Park
Paddocks, Newmarket, England, and to complete all necessary
documents and do all things incidental to and in furtherance of such
purchases on my behalf.
I have read and accept Tattersalls Conditions of Sale and I agree to pay
for all purchases by my agent

I will reimburse my agent for all ancillary costs ( vettings, transport, and
other bona fide expenses) incurred on my behalf upon presentation of
invoice and I agree to pay my agent a commission of 5% of any and all
purchases made by me or on my behalf by my agent.

Signed this 24 day of November 2010

Signature ...........................................................................

Full name (Please print)

JEFFREY DEHAVEN

Address (Please print)

2683 Via De La Vaue G145

DELMAR, Ca 92014

Notes

1.   This Authorisation together with a Payment Reference both
completed and signed by the   principal   should   be   lodged   with
Tattersalls by way of application as soon as possible and preferably
seven days before the sale.

(7)



*Tattersalls*

TATTERSALLS LTD · TERRACE HOUSE · NEWMARKET · SUFFOLK CB8 9BT

TEL (01638) 665931 · FAX (01638) 660850 · www.tattersalls.com · sales@tattersalls.com

Dear Mr Dehaven

We thank you for your Purchaser Authorisation appointing:

Name Gordian Troeller

Address 33 Bemys Road

Upple Buckelbury Berks RG76QL

as your Agent for December Mares Sales

We are please to confirm that this arrangement has been approved.

Your Agent is therefore authorised by us to make purchases, inclusive of VAT, up to the amount of £ 300000 ............ However if for any reason your Agent's purchases exceed that amount you will remain liable for the full amount of his purchases but he will be liable jointly with you for the excess.

Would you please note that an account will be sent to you direct by us following your Agent's confirming his purchases on your behalf.  This account must be settled in full; Interest will be charged if it remains outstanding 28 days after the last day of the sale.

Therefore should you wish to instruct your Agent to purchase in excess of the amount of credit mentioned above, we should be obliged to receive a further application.

A copy of this letter is provided for your agent.

Yours sincerely,

Copy: Agent

122
9/96

⑧

EDMOND MAHONY (CHAIRMAN)
ANDREW BEDFORD · JAMES GEORGE · MARTIN MITCHELL · PAUL RYAN · PATRICK WATT
COMPANY NUMBER 791113 · REGISTERED IN ENGLAND
TATTERSALLS (IRELAND) LTD · RATOATH · CO. MEATH · IRELAND · TEL DUBLIN (01) 8864500 · FAX (01) 8864505

Name & Address:
Diana L. Courteau (CA SBN 113442)
Neil M. Katsuyama (CAN SBN 273172)
880 Apollo St., Suite 246
El Segundo, CA 90245
Tel: (310) 647-2844; Fax: (310) 647-2842

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATTERSALLS LTD., Incorporated in England | CASE NUMBER |
| PLAINTIFF(S) v. | CV11-06311 SJO (SHx) |
| JEFFREY DEHAVEN, an individual, | SUMMONS |
| DEFENDANT(S). | |

TO:     DEFENDANT(S): JEFFREY J. DEHAVEN   AN INDIVIDUAL

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, Diana L. Courteau_____, whose address is 880 Apollo St., Suite 246, El Segundo, CA 90245_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __AUG - 1 2011__

By: _____
        Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Diana L. Courteau (CA SBN 113442)
Neil M. Katsuyama (CAN SBN 273172)
880 Apollo St., Suite 246
El Segundo, CA 90245
Tel: (310) 647-2844; Fax: (310) 647-2842

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATTERSALLS LTD., Incorporated in England<br><br>PLAINTIFF(S)<br><br>v.<br><br>JEFFREY DEHAVEN, an individual,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV11-06311** SJO (SHx)<br><br><br>**SUMMONS** |

TO: DEFENDANT(S): <u>JEFFREY J. DEHAVEN     AN INDIVIDUAL</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Diana L. Courteau</u>, whose address is <u>880 Apollo St., Suite 246, El Segundo, CA 90245</u>.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated: AUG - 1 2011

Clerk, U.S. District Court

By: _____

JULIE PRADO SEAL

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV11- 6311 SJO (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)       NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>Tattersalls, Ltd. | **DEFENDANTS**<br>Jeffrey J. DeHaven |

| | |
|---|---|
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Courteau & Associates<br>880 Apollo Street, Suite 246<br>El Segundo, CA 90245<br>Tel: (310) 647-2844 Fax: (310) 647-2842 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify):

☐ 6 Multi-District Litigation

☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** Over 400,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☒ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

FOR OFFICE USE ONLY:   Case Number: **CV11-06311**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                             ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Suffolk, England |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | San Diego County, California |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County (all claims) | Suffolk, England (all claims) |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date 7/31/11

   Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
   or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
   but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2017, I will file a document entitled DECLARATION OF DOLLY K. HANSEN IN SUPPORT OF WIENER DEFENDANTS' REQUEST FOR JUDICIAL NOTICE with the Clerk of the Court using the CM/ECF system, which will send an electronic notification of such filing to Plaintiff's counsel, Diana L. Courteau.  Ms. Courteau's CM/ECF registered email address is:  courteau-associates@msn.com.


 Dated:  October 2, 2017          SPERTUS, LANDES & UMHOFER, LLP


                                  By:    s/ James W. Spertus
                                         James W. Spertus
                                         *Attorneys for Defendants Gerald Wiener*
                                         *and Finance California*
                                         jim@spertuslaw.com

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711