UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATTERSALLS LTD., Incorporated in England,<br><br>Plaintiff,<br><br>v.<br><br>GERALD WIENER aka GERALD H. WIENER, an individual; FINANCE CALIFORNIA, Inc., a corporation, JEFFREY J. DEHAVEN aka JEFFREY DEHAVEN aka JEFFREY PAPPAS aka THE PREMAE CO. LLC, an individual; THE PREMAE CO. LLC, a corporation, and DOES 1-30,<br><br>Defendants. | Case No.: 17-cv-1125-BTM-<br><br>**ORDER VACATING ENTRY OF DEFAULT AGAINST DEHAVEN; DISMISSING DEHAVEN AS DEFENDANT; AND ENTERING DEFAULT JUDGMENT AGAINST PREMAE**<br><br>**[ECF Nos. 44, 49]** |

I.   **INTRO**

Pending before the Court are Plaintiff Tattersalls' Motion for Entry of Default Judgment (ECF No. 44) and Defendant Jeffrey DeHaven's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 49), which the Court treats as

1

a Motion to Vacate the Entry of Default. On May 2, 2019, the parties argued the Motions before the Court. For reasons set forth below, the Court vacates the Entry of Default against Jeffrey DeHaven, dismisses DeHaven as a Defendant in this action, and grants the Motion for Entry of Default Judgment against Premae.

## II. BACKGROUND

### A. Facts

Plaintiff alleges that Defendants Jeffrey DeHaven and The Premae Company, LLC ("Premae"), along with Gerald Wiener and Finance California Inc. ("Finance"), purchased a racehorse at an auction held by Plaintiff on November 29, 2010 but never paid for it. (FAC ¶ 55). Plaintiff alleges that at the time of the purchase, it believed that DeHaven and Premae were acting alone and was not aware that Defendants Wiener and Finance were their co-conspirators. (*Id.* ¶ 1).

Plaintiff alleges that it "requested a 'bank reference' of creditworthiness from DeHaven/Premae's banker as a condition precedent to sale." (*Id.* ¶ 53). Plaintiff alleges that in response, on October 11, 2010, Wiener and Finance sent a letter that contained the following:

> This letter acknowledges that I have had a relationship with Mr. DeHaven for approximately 15 years. His company, The Premae Company, has a credit facility with Finance California in the amount of $750,000.00. Prior to making this loan I spoke with a number of business associates, who have also had a relationship with Mr. DeHaven, and found him to be honest, trustworthy, and a credible borrower. Should you have any further questions, or need any additional references, please feel free to contact me.

(FAC, Exh. 1).

Plaintiff alleges that it relied on these statements in allowing DeHaven and Premae to take possession of the racehorse before the full purchase price had been paid. (FAC ¶ 59). Plaintiff alleges that all of the statements in this letter "proved false" and "were made to induce plaintiff to 'sell' a thoroughbred racehorse from an internationally known auction house." (FAC ¶ 51).

When Defendants failed to pay for the racehorse, Plaintiff filed legal action against DeHaven and Premae. (*Id.* ¶ 2). According to Plaintiff, as it was pursuing legal action against DeHaven and Premae, it discovered Wiener's and Finance's involvement in a wider fraudulent scheme. (*Id.* ¶ 63). Plaintiff alleges that "the fact of Wiener's and Finance's partnership in DeHaven/Premae was . . . only discovered . . . in late 2016/early 2017, in debtor examination discovery, obtained by plaintiff from Transamerica Life Insurance Company, and TIG, who also sued defendants for fraud, and both deposed Wiener and Finance, in two separate cases." (*Id.* ¶ 65).

Plaintiff details the wider fraudulent scheme by alleging that "Wiener and Finance were participants and co-conspirators in [an enterprise involving a] pattern of using racehorse[s] to defraud plaintiff, and other investor victims using insurance pools." *Id.* ¶ 46. The racehorses were used "to lure potential investors into buying interests in insurance pools [in which those] investments were never repaid." *Id.* ¶ 57. Plaintiff "was deliberately targeted by defendants for the purpose of using plaintiff's global reputation to gain credibility, and in order to facilitate the fraudulent scheme. The transfer of racehorses are recorded and published throughout the world which defendants were aware of and which defendants knew they could use to provide the appearance of legitimacy and creditworthiness to potential investors for their fraudulent scheme." *Id.* ¶ 70.

Plaintiff further alleges that Wiener was the "director of the enterprise" and "us[ed] his legal background [to instruct] DeHaven/Premae . . . on their actions" and thwarted discovery, filed a frivolous appeal, concealed defendants' interest in DeHaven/Premae to set up shell entities, designed and facilitated the fraudulent use of the racehorse in relation to the insurance pools, and concealed the property from creditors. *Id.* ¶ 76.

According to Plaintiff, had Defendants not concealed material facts, including that "Wiener and Finance were member/partners with interest in

DeHaven/Premae," Plaintiff would not have sold the racehorse to them. *Id.* ¶ 60

**B. Proceedings**

In 2011, Plaintiff began pursuing legal action against Defendants DeHaven and Premae. (FAC ¶ 8). DeHaven filed for bankruptcy on May 12, 2014, triggering an automatic stay of all other proceedings involving him. *See* 11 U.S.C. § 362; ECF No. 49-2 "Hornbuckle Decl." ¶ 2. Plaintiff initiated an adversary proceeding before the Bankruptcy Court in June 2015. *See Tattersalls Ltd. v. Jeffrey Jay DeHaven*, Bankruptcy Adv. Pro. No. 15-90110-CL, Dkt. 1 ("Bankr. Dkt."). The adversary complaint alleges that DeHaven "never intended to pay the purchase price for the Horse" but rather intended to defraud Plaintiff at the time of sale. (Bankr. Dkt. 1). Plaintiff sought a judgment that the resulting debts were nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A). (Bankr. Dkt. 13). In August 2015, the Bankruptcy Court entered default against DeHaven. (ECF No. 44-6). Plaintiff obtained default judgment on February 4, 2016. (FAC ¶ 1, n.1).

On June 5, 2017, Plaintiff initiated this action against DeHaven, Premae, Wiener, and Finance. (ECF No. 1). On September 18, 2017, Plaintiff filed the First Amended Complaint ("FAC"), alleging the following causes of action against all Defendants: (1) intentional misrepresentation, (2) negligent misrepresentation, (3) fraudulent concealment, (4) federal and California RICO violations, (5) promissory fraud, (6) conspiracy to defraud, and (7) breach of fiduciary duty. (ECF No. 11). The FAC lists the dates of the cause of action as 2010 and 2011, but states that the "criminal history of the enterprise" dates back as early as 2004. (FAC ¶¶ 4, 7). However, the FAC avers that Plaintiff only discovered evidence forming the basis for the enterprise allegations "in late 2016/early 2017" as a result of discovery obtained after the February 4, 2016 entry of default judgment. (FAC ¶ 1, n.1).

While pursuing this action, Plaintiff also sought an Amended Default

Judgment from the Bankruptcy Court. (See ECF No. 44-6). On January 4, 2018, the Bankruptcy Court entered an Amended Judgment holding that Dehaven is liable to Plaintiff for $794,296.65 and that the debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2). (ECF No. 44-6). The Bankruptcy Court later granted a discharge under 11 U.S.C. § 727 to Jeffrey Jay DeHaven and Kimberly Terese-DeHaven on November 15, 2018. (ECF No. 54-4).

Plaintiff served the FAC on Defendants DeHaven and Premae on December 16, 2018, after the bankruptcy discharge. (ECF No. 41). Neither party timely responded, and the Clerk of Court entered default against DeHaven and Premae on January 28, 2019. (ECF Nos. 42, 43). Plaintiff moved the Court to enter default judgment against DeHaven and Premae in the amount of $794,296.65. (ECF No. 44).

### III.   LEGAL STANDARD

Entry of default judgment is governed by Federal Rule of Civil Procedure 55(b) and is left to the trial court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). However, default judgments "are ordinarily disfavored." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). After default has been entered, the well-pleaded factual allegations of the complaint, except those relating to the amount of damages, shall be taken as true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). "However, where less than all defendants have defaulted, the allegations are only true as to those defaulting defendants." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1000 (N.D. Cal. 2001). In determining damages, the court may rely on evidence submitted by the plaintiff or conduct a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2). A judgment by default must not award damages that are different from or exceed the amount requested in the plaintiff's complaint. Fed. R. Civ. P. 54(c).

Factors which may be considered by courts in exercising their discretion as

to whether to enter default judgment include: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel*, 782 F.2d at 1472.

A court may set aside a default for "good cause."  Fed. R. Civ. P. 55(c). "When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

**IV.    DISCUSSION**

Because the facts of the bankruptcy discharge relate to Defendant DeHaven alone, the Court addresses the facts and arguments as to each defaulting Defendant separately.

**A. Entry of Default Against DeHaven**

DeHaven asserts that the Court should set aside the default and dismiss DeHaven as a Defendant because (1) Tattersalls filed this action during the pendency of DeHaven's bankruptcy proceedings in violation of an automatic stay; (2) the bankruptcy court discharged the debt Tattersalls seeks to recover; and (3) Tattersalls is collaterally estopped from pursuing a separate judgment. (ECF No. 49).  In relevant part, Tattersalls submits that the stay was no longer in effect when Tattersalls served the FAC on DeHaven, and that the sum sought is excepted from any discharge. (ECF No. 54 at 4).  The Court will address each argument in turn.

**1. Automatic Stay**

A petition for bankruptcy triggers an automatic stay of "the enforcement, against the debtor or against property of the estate, of a judgment obtained

6

17-cv-1125-BTM-

before the commencement of the case under this title." 11 U.S.C. § 362(a). Violations of the automatic stay are "void rather than voidable." *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992). The Ninth Circuit instructs courts to construe the automatic stay broadly and exceptions to the stay narrowly. *See In re Stringer*, 847 F.2d 549, 551-52 (9th Cir. 1988). The function of the automatic stay is both to "protect[ ] the relative position of creditors" and to "shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Id.* at 551.

Although Plaintiff failed to move for relief from the stay prior to filing the original Complaint, the automatic stay was no longer in effect when Tattersalls served the FAC on DeHaven in December 2018 because the Bankruptcy Court had discharged DeHaven a month earlier. *See In re Bark*, 598 B.R. 481, 484 (Bankr. C.D. Cal. 2019) ("In a chapter 7 case for an individual, the automatic stay terminates when a discharge is granted or denied."); *In re Rich*, 544 B.R. 436, 440 (Bankr. E.D. Cal. 2016) ("As to the debtor, the stay evaporates when the case is closed, the case is dismissed, or the discharge is entered, §§ 362(c)(2), 727(a).") Thus, DeHaven's argument that the action is void because of the automatic stay is unavailing.

**2. Bankruptcy Discharge and Collateral Estoppel**

DeHaven argues that the bankruptcy discharge prevents Plaintiff from pursuing an action against DeHaven and from obtaining another default judgment for $794,295.65. Alternatively, DeHaven argues that collateral estoppel applies because the issues have already been litigated before the bankruptcy court and a final judgment entered. The Court concludes that the bankruptcy discharge precludes Plaintiff's attempts to recover alleged additional debts owed by DeHaven.

A discharge "voids any judgment at any time obtained to the extent that such judgment is a determination of the personal liability of the debtor with

respect to any debt discharged." 11 U.S.C. § 524(a)(1). It also "operates as an injunction against the commencement or continuation of an action . . . to recover such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). However, 11 U.S.C. § 523 enumerates exceptions to discharge, including debts "for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2).

Tattersalls obtained an amended judgment from the Bankruptcy Court dated January 4, 2018 citing fraud as the basis for excepting $794,295.65 in debt from discharge:

> Judgment on the Plaintiff's adversary complaint to determine the dischargeability of the debt owed to Tattersalls Ltd. is hereby awarded in favor of Plaintiff, Tattersalls Ltd., and against Defendant, Jeffrey Jay DeHaven for $794,295.65, which includes court costs of $680.00. Interest will accrue on the total judgment amount at the federal rate commencing December 21, 2017. This judgment is excepted from the Defendant's discharge pursuant to 11 U.S.C. Section 523(a)(2).
>
> This Amended Judgment augments and supercedes [sic] the earlier judgment by default entered February [4], 2016.

(ECF No. 44-6) (modified to state correct entry date). Tattersalls argues that the Amended Judgment establishes a sum certain that this Court should award upon entry of default judgment against DeHaven. However, the November 2018 discharge order provides that "[a] discharge under 11 U.S.C. § 727 is granted to: Jeffrey Jay Dehaven [and] Kimberly Terese-DeHaven." (ECF No. 54-4). Notably, the November discharge does not exempt any other debt.

Contrary to Plaintiff's assertions, 11 U.S.C. § 523(a)(2) does not permit Plaintiff to recover fraudulently obtained funds beyond those exempted from discharge in the Bankruptcy Court's January 2018 amended judgment. The Court further notes that Plaintiff first alleged the existence of an enterprise in

June 2017, well before seeking and receiving the January 2018 amended judgment. Plaintiff thus had the opportunity to argue the nondischargeability of debts resulting from DeHaven's involvement in the enterprise, but failed to do so before the discharge order was entered. Plaintiff cannot obtain a second judgment from this Court in any amount, because (1) the matter was already adjudicated and (2) the judgment would exceed the amount exempted from discharge in contravention of 11 U.S.C. § 524(a). Simply put, Plaintiff was already awarded a $794,295.65 judgment against DeHaven in the Bankruptcy Court, and the rest of DeHaven's debts were discharged. The Court concludes that the discharge forecloses any further recovery from DeHaven through this action.

**3. CONCLUSION**

Good cause having been shown, the Court hereby sets aside the entry of default against DeHaven. *See* Fed. R. Civ. P. 55(c). Because Plaintiff cannot recover a debt discharged in bankruptcy, the Court further dismisses DeHaven as a Defendant, and includes all associated aliases in the dismissal. There being no just reason for delay, the judgment of dismissal as to DeHaven is certified as final pursuant to Fed. R. Civ. P. 54(b).

**B. Entry of Default Judgment Against Premae**

Although Plaintiff cannot recover debts owed by DeHaven, Plaintiff seeks to recover $794,296.65 against the remaining defaulting Defendant, The Premae Company, LLC, which was not subject to a bankruptcy discharge. (ECF No. 44-2, Courteau Decl. ¶ 9). Plaintiff avers that "the sum certain for the amount of $794,296.65 is not the entire amount of damages sought against all Defendants in this action related to further damages and exemplary damages, but strictly based on the sum certain of damages against defaulting Defendants as previously adjudicated." (Courteau Decl. ¶ 9).

"If the plaintiff's claim is for a sum certain or a sum that can be made

certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount." Fed. R. Civ. P. 55(b)(1). However, "a claim is not a sum certain unless no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 929 (9th Cir. 2004). To obtain a default judgment, the "[p]laintiff must prove the amount of damages to which it is entitled." *Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d 995, 1010 (N.D. Cal. 2001).

The Court previously denied Plaintiff's Motion for Entry of Default Judgment because Plaintiff had not shown its claim was for a sum certain, or a sum that could be made certain by computation. (ECF No. 28). Plaintiff has cured the deficiencies identified in the Court's previous order by submitting the amended judgment in the bankruptcy adversary proceeding. (ECF No. 44-6). The judgment establishes that DeHaven owed Plaintiff $794,296.65 plus interest for the fraudulent racehorse transaction. (Id.). The FAC alleges that Premae was incorporated in January 2009, that DeHaven was a member and agent of Premae, and that Premae engaged in the same fraudulent transaction that was the subject of the amended judgment in bankruptcy. (FAC ¶ 16, 29, 30, 55). Plaintiff has thus established a sum certain as to Premae.

Turning to the *Eitel* factors, the Court concludes that Plaintiff's substantive claims have merit, and the FAC, which largely survived a Motion to Dismiss (ECF No. 30), is sufficient. *See Eitel*, 782 F.2d at 1472. The Court has little reason to believe there is a serious dispute regarding the material facts, as Defendant Premae has failed to respond and the remaining Defendants have filed a conclusory answer "asserting several affirmative defenses without tendering any specific facts or allegations which contradict the allegations of the [FAC]." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d at 1005.

The sum sought is significant, but was previously adjudicated and does not

include the full amount of damages outlined in the FAC's prayer for relief. (Exh. 4). The Court further concludes that the default was not due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Plaintiff properly served Premae, and has made diligent efforts to litigate the merits of this case. (ECF No. 44-3). Defendant has seemingly attempted to evade service and this litigation through the use of P.O. Boxes and fictitious addresses. *See id.* If the Court were to deny the Motion, the possibility of prejudice to Plaintiff is high. *See id.* The *Eitel* factors weigh in favor of granting Plaintiff's Motion for Entry of Default Judgment.

Finally, the Court must consider the risk of inconsistent judgments between the defaulting and answering Defendants. Federal Rule of Civil Procedure 54(b) permits the Court to enter default judgment as to some but not all defendants:

> . . . when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

*See Shanghai Automation Instrument Co. v. Kuei*, 194 F.Supp.2d at 1005 (citing *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980)). However, "under certain circumstances, the court should not enter a default judgment against one or more defendants which is, or likely to be, inconsistent with judgment on the merits in favor of the remaining answering defendants." *Id.* (citing *Frow v. De La Vega*, 82 U.S. 552 (1872)); *see also In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532-33 (9th Cir. 2001) (holding bankruptcy court abused its discretion "by entering final default judgments . . . that directly contradicted its earlier ruling in the same action" as to a non-defaulting defendant). This extends to defendants who are similarly situated as well as those facing claims asserting joint liability. *See id.* The Court exercises its discretion to determine whether uniformity of liability is logically required by the facts and theories of the case, or if "the risk of inconsistent judgments is not sufficiently extreme to bar entry of default judgment as a matter of law." *Id.*

Here, the risk is not sufficient to bar entry of default judgment against Premae. The FAC alleges that Defendant Wiener and Finance were "participants and co-conspirators," and that Wiener, as the "director of the enterprise," used "his legal background [to instruct] DeHaven/Premae . . . on their actions." (FAC ¶¶ 46, 76). The FAC also states that Plaintiffs initially thought DeHaven and Premae were acting alone. (FAC ¶ 63). In theory, Defendants Wiener and Finance could successfully defend against their alleged roles in the scheme without rendering the judgment against Premae logically inconsistent. It would simply mean that Defendants Wiener and Finance were not part of the conspiracy.

Because the differing judgments "would not necessarily be illogical," the *Eitel* factors weigh in Plaintiff's favor, and there is no just reason for delay, the Court will exercise its discretion pursuant to Rule 54(b) and direct the entry of default judgment against Premae. *Shanghai Automation Instrument Co., Ltd.*, 194 F.Supp.2d at 1009-10.

## V. CONCLUSION

The Court VACATES the entry of default as to DeHaven, and DISMISSES DeHaven as a Defendant. (ECF No. 49). The Court GRANTS the Motion for Entry of Default Judgment in favor of Plaintiff against The Premae Company, LLC. (ECF No. 44). The Court directs the Clerk to enter that judgment in the amount of $794,295.65 plus interest at the federal rate from the date of entry of this order. The judgments as to these two Defendants are final pursuant to Rule 54(b).

IT IS SO ORDERED.

Dated: May 21, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge