

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATTERSALLS LTD, incorporated in England,<br><br>        Plaintiff,<br><br>v.<br><br>GERALD WIENER aka GERALD H. WIENER, et al.,<br><br>        Defendants. | Case No.: 17cv1125-BTM(KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ATTORNEY DEPOSITIONS**<br><br>**[Doc. No. 127.]** |

Before the Court is defendants' Motion to Compel Attorney Depositions [Doc. No. 127] and plaintiff Opposition thereto [Doc. No. 131]. In the Motion to Compel, defendants seek an order compelling plaintiff's former attorney, Neil Katsuyama, and plaintiff's current counsel, Diane L. Courteau, to appear for depositions in this case on issues related to the statute of limitations. For the reasons outlined more fully below, the Court finds that defendants' Motion to Compel Attorney Depositions [Doc. No. 127] must be GRANTED in part and DENIED in part.

## *Background*

In an Order filed on September 13, 2018, the District Court concluded the First Amended Complaint ("FAC") adequately pled the elements of the following causes of

action against defendants Wiener and Finance California: (1) intentional misrepresentation; (2) negligent misrepresentation; (3) fraudulent concealment; (4) a pattern of racketeering under RICO; (5) promissory fraud; and (6) conspiracy to defraud. [Doc. No. 30, at pp. 7-12.] The District Court's Order also includes a detailed summary of the allegations in the FAC. [Doc. No. 30, at pp. 2-4.] In addition, the District Court concluded plaintiff adequately pled tolling of the applicable statute of limitations for these causes of action. [Doc. No. 30, at pp. 13-15.] The District Court's Order also sets forth the elements necessary to establish equitable tolling of the statute of limitations. [Doc. No. 30, at p. 14.] This detailed background information will not be repeated herein but is referenced for the benefit of the parties and the Court in considering defendants' Motion to Compel Attorney Depositions. [Doc. No. 127.]

## *Discussion*

### I. *Current Scope of Discovery.*

In an Order filed on January 14, 2020 [Doc. No. 128], the District Court granted in part a Motion to Bifurcate [Doc. No. 87] filed by defendants Gerald Wiener and Finance California ("defendants"). In this regard, the District Court's Order states that discovery into the merits of the case is stayed from February 1, 2020 until May 1, 2020. [Doc. No. 128, at p. 2.] From February 1, 2020 until May 1, 2020, the District Court ordered the parties to "engage in expedited discovery as to the statute of limitations issue." [Doc. No. 128, at p. 2.] Defendants' Motion to Compel Attorney Depositions appropriately seeks discovery relevant to statute of limitations issues.

### II. *Summary of Defendants' Motion to Compel Attorney Depositions.*

In the Motion to Compel Attorney Depositions, defendants seek an order compelling plaintiff's previous counsel, Mr. Katsuyama, and plaintiff's current counsel, Ms. Courteau, to appear for depositions concerning two statute of limitations issues: (1) Whether the 2011 investigations detailed in plaintiff's publicly filed attorney time entries produced facts sufficient to allow plaintiff to file its claims alleging fraud against defendants Wiener and Finance California in 2011 (*i.e.*, prior to the expiration of the

three-year statute of limitations in California Code of Civil Procedure Section 338(d)); and (2) whether competent counsel should have known or discovered the claims alleged in the FAC in or near 2011 based on the circumstances known at that time. [Doc. No. 12, at p. 2.]

Defendants contend that Mr. Katsuyama is an important witness on statute of limitations issues, because they discovered time entries in billing records filed in another action indicating Mr. Katsuyama conducted investigations on behalf of plaintiff which included "significant attention to defendants in 2011." [Doc. No. 127, at pp. 3-4.] Defendants believe investigations by Mr. Katsuyama would have revealed enough facts for plaintiff to state the elements of its claims against defendants as early as 2011. [Doc. No. 127, at pp. 3-4.] According to defendants, plaintiff "investigated and pursued its claims through counsel, [so] only counsel can answer the key questions," such as what investigative steps were taken and when and what was discovered during the investigations. [Doc. No. 127, at p. 4.] Copies of the subject time entries are attached as exhibits to defendants' Motion to Bifurcate. [Doc. Nos. 87-2, at pp. 11-30.] Defendants have not only referenced these exhibits in their Motion to Compel, they have also incorporated by reference all briefs and evidence submitted by the parties in connection with the Motion to Bifurcate. [Doc. No. 127, at p. 3, referring to Doc. Nos. 87, 95, 99.]

Exhibits filed in support of defendants' Motion to Birfurcate also indicate plaintiff filed a Complaint against DeHaven in the United States District Court for the Central District of California on August 1, 2011, seeking specific recovery of the race horse, as well as contract and other damages, including attorney's fees (Case No. 11-06311). [Doc. No. 87-3, at pp. 2-17.] Defendants Wiener and Finance California were not named as defendants in this Central District action. However, the Complaint in the Central District action does include allegations that DeHaven provided plaintiff with a reference letter dated October 11, 2010 from defendants Wiener and Finance California in connection with DeHaven's purchase of the race horse and that plaintiff relied on this
///

letter when it permitted DeHaven to take possession of the horse before paying the full purchase price. [Doc. No. 87, at p. 5, referring to Doc. No. 87-3, at pp. 5-7 (¶¶ 13, 18).]

On or about September 23, 2011, in the Central District action, Mr. Katsuyama, who was then an associate attorney at Courteau & Associates, filed a Declaration in support of plaintiff's Application for a Default Judgment against DeHaven. [Doc. No. 87-2, at pp. 3-7.] In support of this Application, Mr. Katsuyama attached attorney billing records as Exhibit 2 to his Declaration for the period June 16, 2011 through August 31, 2011. These billing records include time entries by Mr. Katsuyama, which specifically mention defendants Wiener and/or Finance California.[1] [Doc. No. 87-2, at pp. 11-51.] On July 18, 2011, for example, there is a time entry by Mr. Katsuyma, which states as follows: "DRAFT & DICTATE COMPLAINT RE: Fraud & Negligent Misrepresentation, Intent to Defraud from Finance California letter, Specific Performance cause-of-action, clarifying Tattersalls' reliance on promise, and Finance California correspondence from DeHaven." [Doc. No. 87-2, at p. 24.] Based on other time entries, defendants believe the Complaint in the Central District action originally included allegations of fraud and negligent misrepresentation against defendants Wiener and Finance California based on the October 10, 2010 letter. Defendants also believe these original allegations against Wiener and Finance California in the Central District action were comparable to the current allegations in this case, but plaintiff deleted these original allegations at the direction of plaintiff's counsel in the U.K. [Doc. No. 87, at p. 5, citing Doc. No. 87-2, at pp. 26-27.] In this regard, a time entry dated July 29, 2011 states as follows: "DRAFT & DICTATE COMPLAINT RE: Removing causes-of-action six through nine-pursuant to client's request. . . ." [Doc. No. 87-2, at p. 27.] Later time

---

[1] Each time entry in the billing records includes the initials of the attorney who made the entry. Most of the time entries in these billing records were made by "NK." A timekeeper summary at the end of the billing records includes a list of attorneys who billed time on the case, and Mr. Katsuyama is the only attorney with the initials "NK." [Doc. No. 87-2, at p. 51.]

4

entries dated August 10, 2011 indicate Mr. Katsuyma's investigative efforts included telephone conversations with other attorneys in cases involving DeHaven. [Doc. No. 87-2, at pp. 36-37.] Plaintiff and defendants disagree about the meaning of the above-referenced time entries from the Central District action, so defendants seek to obtain "clear testimony" about the entries from Mr. Katsuyama. [Doc. No. 127, at pp. 4-5.]

One of plaintiff's arguments opposing defendants' present Motion is that it is plaintiff's burden to prove the statute of limitations does not bar plaintiff's claims, so only defendants' alleged conduct of blocking plaintiff's efforts to discover material facts is relevant to refute a statute of limitations defense. The Court disagrees. Generally, the statute of limitations is an affirmative defense, so the defendant has the burden to prove the facts necessary to show a cause of action is barred. *Investors Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011). In other words, the defendant can discover and present evidence to show claims are barred, because the plaintiff had actual or constructive knowledge of the relevant facts prior to the expiration of the statute of limitations. *Id.* The discovery rule and the fraudulent concealment doctrine are exceptions to the statute of limitations, and the plaintiff has the burden of proving belated discovery justifies a tolling of the statute of limitations (*i.e.*, that plaintiff did not discover the cause of action during the statutory period despite due diligence). *Investors Equity Life Holding Co. v. Schmidt*, 195 Cal. App. 4th 1519, 1533 (2011).

### III. *Whether the Filing of Billing Records in the Central District Action Waived the Attorney-Client Privilege.*

Defendants argue plaintiff voluntarily waived the attorney-client privilege as to all matters mentioned in the billing records when it filed them in the Central District action to support its request for reimbursement of attorney's fees and costs. [Doc. No. 127, at pp. 4-5.] In its Opposition to defendants' Motion, plaintiff conversely argues the filing of billing records in the Central District action did not waive the attorney-client privilege. [Doc. No. 131, at pp. 4-6.]

///

Under California law, "[t]he attorney-client privilege only protects communications between attorney and client made for the purpose of seeking or delivering the attorney's legal advice or representation." *Los Angeles County Board of Supervisors v. Superior Court*, 2 Cal.5th 282, 293 (Cal. 2016). "Invoices for legal services are generally not communicated for the purpose of legal consultation. Rather, they are communicated for the purpose of billing the client and, to the extent they have no other purpose or effect, they fall outside the scope of an attorney's professional representation." *Id.* In other words, "the contents of an invoice are privileged only if they either communicate information for the purpose of legal consultation or risk exposing information that was communicated for such a purpose. This latter category includes any invoice that reflects work in active and ongoing litigation." *Id.* at 300.

Here, there is nothing to indicate the information in the billing records publicly filed in the Central District action against DeHaven are protected by the attorney-client privilege. These billing records convey only general information about the work performed, and they appear to have been prepared as part of the usual practice of recordkeeping that is done to facilitate the payment of attorney's fees and for no other purpose. A brief review of these time entries did not reveal anything that appeared to reveal the content of confidential communications with the client or litigation strategy. Further, the billing records pertain to the Central District litigation, which has not been active or ongoing for years. As a result, it is this Court's view that the information contained in these billing records is not protected by the attorney-client privilege. Accordingly, filing the billing records in the public record did not waive the attorney-client privilege, because the records are not privileged.

Regardless, there may be some confidential communications related to the time entries in the billing records that would be privileged if those confidential communications "bear some relationship to the attorney's provision of legal consultation," such as a legal opinion or specific advice given during the attorney-client relationship. *Id.* at 294. A party may support a request for attorney's fees "with billing

6

records redacted to conceal information protected by the attorney-client privilege." *Concepcion v. American Holdings, Inc.*, 223 Cal.App.4th 1309, 1327 (2014). To the extent plaintiff contends there is privileged information in the publicly filed billing records that was not redacted, it "may well have impliedly waived any privilege that otherwise protected them." *Id.* Accordingly, the Court finds that the billing records publicly filed on plaintiff's behalf in the Central District action against DeHaven are not protected by the attorney-client privilege. Defendants are therefore not precluded from deposing Mr. Katsuyama about his time entries from the publicly filed billing records that are relevant to statute of limitations issues, including time entries that mention his investigative efforts.

*IV.* ***Whether Plaintiff Has Impliedly Waived the Attorney-Client Privilege as to the Facts and Circumstances of Investigations Completed by Plaintiff's Attorneys in 2011 that Appear to Contradict Allegations in the FAC Claiming Plaintiff Could Not Have Discovered All Material Facts to State Its Claims Against Defendants Wiener and Finance California Until Late 2016 or Early 2017.***

Defendants argue the Court should grant its Motion to Compel Attorney Depositions, because the billing records plaintiff publicly filed in the Central District action reveal that plaintiff's attorneys conducted and directed investigations into DeHaven that would have revealed all material facts necessary for plaintiff to state the claims asserted against defendants in the FAC as early as 2011. According to defendants, time entries in the publicly filed billing records indicate plaintiff investigated and pursued its claims through counsel, and, as a result, only counsel can answer key questions about the information uncovered during the investigations. Defendants believe that truthful answers about these investigations will disprove allegations in the FAC that plaintiff could not have discovered the material facts necessary to state its claims against defendants Wiener and Finance California until late 2016 or early 2017. [Doc. No. 127, at pp. 2-4.] Under these circumstances, defendants argue plaintiff cannot rely on the attorney-client privilege to avoid having Mr. Katsuyama respond to deposition questions about the investigations he completed in 2011, because the results of these investigations

are either not privileged or the privilege was impliedly waived because plaintiff's allegations put protected information "in issue." [Doc. No. 127, at pp. 5-8.]

"In general, when a party asserts the attorney-client privilege, that party has the burden of showing the preliminary facts necessary to support the privilege." *Venture Law Group v. Superior Court*, 118 Cal.App.4th 96, 102 (Cal. App. 2004). "After this burden is met, or where there is no dispute concerning the preliminary facts, the burden shifts to the party opposing the privilege to show either the claimed privilege does not apply, an exception exists, or there has been an express or implied waiver." *Id.*

California law recognizes an implied waiver of the attorney-client privilege when the client puts otherwise privileged communications directly at issue so that disclosure is essential to a fair adjudication of the action. *Southern California Gas Co. v. Public Utilities Commission*, 50 Cal. 3d 31, 39 (Cal. 1990). Federal Courts have applied a similar standard to determine whether a party has impliedly waived the attorney-client privilege by putting privileged communications directly at issue. *Id.*

In support of their implied waiver argument, defendants cite *American Standard Inc. v. Bendix Corp.*, 80 F.R.D. 706 (W. D. Mo. 1978) and *In re Imperial Corp. of America*, 178 F.R.D. 286 (S.D. Cal. 1998). Both cases involve facts and circumstances analogous to those at issue here. In *American Standard v. Bendix*, the plaintiff alleged fraud -- that the defendant misrepresented facts about the design of a product during precontractual negotiations. The defendant claimed the plaintiff's fraud allegations were barred by the five-year statute of limitations, but the plaintiff claimed it discovered the fraud more than five years after the misrepresentations were made. During discovery, the plaintiff revealed that his attorney discovered the fraud. *Id.* at 708-709. Because of this discovery, the District Court concluded the attorney became "one of the most important trial witnesses in this case, subject to direct and cross-examination on the details of what information he had" before and after he discovered the alleged fraud. *Id.* at 709. Therefore, the District Court concluded the work product doctrine did not preclude defendant from discovering trial preparation materials. *Id.* In addition, the District Court

overruled the plaintiff's attorney-client privilege objection for two reasons. First, the privilege only protects confidential communications, "not factual information discovered by the attorney." *Id.* Second, the privilege was waived, because a material issue "voluntarily" injected into the case by the plaintiff required "ultimate disclosure by the attorney of the information." *Id.* at 710. The District Court commented it did not appear the deposition of the attorney would involve "a great deal of information ordinarily protected by the attorney-client privilege." *Id.* However, "to the extent that [relevant information would] ordinarily [fall] within the protection of the attorney-client privilege," the District Court ruled the privilege was waived. *Id.*

Similarly, the case entitled *In re Imperial Corp. of America*, 178 F.R.D. 286, involved allegations of attorney malpractice discovered by the plaintiff's new attorney, as well as allegations of late discovery to avoid the statute of limitations. The defendant sought to discover what facts the plaintiff's former attorneys possessed and what investigations were being pursued by those attorneys during a certain time. *Id.* at 289-290. In their depositions, the former attorneys testified they did not remember what investigations they pursued at that time, so the defendant wanted to discover documents that could contain relevant information on these matters. *Id.* at 288. The District Court concluded any privilege was waived "at least in the limited scope of addressing the avoidance of the statute of limitations issue," because plaintiff placed in issue his own knowledge and that of his former attorneys. *Id.* The implied waiver was limited by the District Court to documents that contained "information pertinent to the statute of limitations issues" (*i.e.*, when plaintiff's attorney became aware of facts which would have put the plaintiff and his attorney on notice that a cause of action could be alleged; and the specific facts that would have put the plaintiff's attorney on notice). *Id.* at 290. The parties were instructed to follow "the carefully crafted guidelines set forth by the Fifth Circuit in *Conkling v. Turner*, 883 F.2d 431 (5th Cir. 1989)." *Id.*

*Conkling v. Turner*, 883 F.2d at 431, also involved allegations of fraud and allegations made to avoid the statute of limitations – the plaintiff therein alleged he was

fraudulently induced to relinquish his ownership in stock based on false assertions made by the defendant, but only learned many years later from his attorney that the defendant's statements were false. *Id.* at 432-433. The Fifth Circuit concluded the plaintiff waived the attorney-client privilege and work product protection as to matters relevant to when the alleged fraud was discovered. Under the circumstances, the Fifth Circuit concluded the plaintiff's attorneys could be deposed to respond to questions on certain topics: (1) when the attorneys told the plaintiff or gave him reason to believe he had been defrauded; (2) whether plaintiff supplied any information relevant to that determination; (3) the specifics of that information; and (4) when it was supplied. *Id.* at 435.

As in these other cases, plaintiff's FAC includes specific allegations made to avoid the statute of limitations, and, as a result, plaintiff has voluntarily placed "at issue" when plaintiff and/or its attorneys discovered material facts that would have put them on notice of any fraud claims against defendants Wiener and Finance California. Defendants are therefore entitled to discover information relevant to when plaintiff and/or its attorneys discovered the material facts that serve as the basis for its causes of action against defendants in this action. The publicly filed time entries of plaintiff's former attorney, Mr. Katsuyama, show he personally investigated facts about DeHaven and/or defendants in 2011 that may have or should have served to put plaintiff on notice of potential fraud claims against defendants at that time. As the District Court noted in *American Standard v. Bendix*, 80 F.R.D. at 709, the attorney-client privilege only protects confidential communications and not facts discovered by the attorney. In addition, the above-cited cases establish that plaintiff cannot use the attorney-client privilege or the work product doctrine to prevent defendants from discovering information highly relevant to its statute of limitations defense. In other words, defendants may depose Mr. Katsuyama to discover what facts he learned during any investigations he directed or conducted in 2011 concerning DeHaven and/or defendants. To the extent any deposition testimony by Mr. Katsuyama about his 2011 investigations could be protected by the attorney-client privilege or the work product doctrine, those protections have been waived. Accordingly,

the Court finds that defendants' Motion to Compel Attorney Depositions must be GRANTED to the extent it requests an order requiring Mr. Katsuyama to appear for a deposition in this case to respond to questions about the investigations he conducted or directed in 2011 concerning DeHaven/Premae and/or defendants Wiener and Finance California, and the facts discovered as a result of any such investigations.

With respect to defendants' request for an order compelling plaintiff's current attorney, Ms. Courteau, to appear for a deposition in this case, defendants have only stated they want to depose her for the following reason: "[T]he Complaint and other filings by plaintiff's counsel make it clear that [Ms. Courteau] is and has long been the 'sole attorney representing [plaintiff]' and is 'uniquely familiar with the history of the case' including the alleged acts of diligence relied upon for plaintiff's fraudulent concealment, equitable tolling, and other statute of limitations arguments." [Doc. No. 127, at p. 4.]

Without more, the Court finds defendants' request for an order compelling Ms. Courteau to appear for a deposition must be DENIED without prejudice. At this time, there is insufficient evidence to indicate Ms. Courteau is a key witness who personally investigated facts indicating plaintiff cannot avoid the statute of limitation because it was put on notice of its fraud claims against defendants in or near 2011. The publicly filed billing records from the Central District action against DeHaven suggest her involvement in the case may have been minimal during the time in question. For example, the publicly filed billing records for the period June 16, 2011 through July 29, 2011 indicate Mr. Katsuyama billed a total of 81 hours to the case, and Ms. Courteau only billed a total of 3.7 hours during this time. [Doc. No. 87-2, at pp. 11-29.] For the period August 1, 2011 through August 31, 2011, the publicly filed billing records indicate Mr. Katsuyama billed a total of 60.5 hours to the case, and Ms. Courteau only billed a total of 8.3 hours during this time. [Doc. No. 87-2, at p. 51.] Defendants may renew their request to depose Ms. Courteau if they can present additional evidence to establish she is a direct, key witness to the early discovery of facts relevant to matters defendants

intend to pursue in their dispositive motion following expedited discovery on statute of limitations issues.

## *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that defendants' Motion to Compel Attorney Depositions is GRANTED in part and DENIED in part. Defendants' Motion is GRANTED to the extent it seeks an order compelling plaintiff's former attorney, Mr. Katsuyama, to appear for a deposition in this case regarding any investigations he conducted or directed in 2011 about DeHaven and/or defendants Wiener and Finance California, as well as any findings or conclusions he reached as a result of any such investigations. Defendants' Motion is DENIED without prejudice to the extent it seeks an order compelling plaintiff's current attorney, Ms. Courteau, to appear for a deposition in this case on statute of limitations issues. To date, defendants have not presented enough evidence to establish the need for Ms. Courteau's deposition on statute of limitations issues.

IT IS FURTHER ORDERED that plaintiff's counsel must, within three (3) court days of the date this Order is issued, provide defense counsel with a letter setting forth at least five (5) business days when Mr. Katsuyama and plaintiff's counsel are available for a deposition prior to March 6, 2020. Upon receipt of this letter, defendants shall immediately serve Mr. Katsuyama and plaintiff's counsel with an appropriate notice setting the date, time, and place for Mr. Katsuyama's deposition. The Notice must also explain the limited scope of the deposition, consistent with this Order, which defense counsel is to provide Mr. Katsuyama.

IT IS SO ORDERED.

Dated: February 7, 2020

Hon. Karen S. Crawford
United States Magistrate Judge